# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-20308

United States Court of Appeals
Fifth Circuit

**FILED**

December 13, 2016

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

　　　　　Plaintiff–Appellee,

v.

CESAR BERNEL-AVEJA, also known as Cesar Areja, also known as Cesar Aveja, also known as Cesar B. Aveja, also known as Cesar Bernel Aveja, also known as Cesar Bernal Aveja, also known as Raul Luviano,

　　　　　Defendant–Appellant.

Appeal from the United States District Court
for the Southern District of Texas

Before HIGGINBOTHAM, SMITH and OWEN, Circuit Judges.

PRISCILLA RICHMAN OWEN, Circuit Judge:

Cesar Bernel-Aveja was convicted under 8 U.S.C. § 1326(a) and (b)(2) of illegal reentry after deportation and appeals his sentence. He contends that his prior 1996 Ohio conviction for burglary does not qualify as "burglary of a dwelling," a specifically enumerated "crime of violence" under United States Sentencing Guideline § 2L1.2,[1] and therefore that the district court erred in

---

[1] U.S. SENTENCING GUIDELINES MANUAL § 2L1.2 (U.S. SENTENCING COMM'N 2014).

No. 15-20308

applying a 12-level sentence enhancement.  We vacate his sentence and remand for resentencing.

## I

Bernel-Aveja pleaded guilty without a plea agreement to illegal reentry after deportation subsequent to an aggravated felony conviction, which was a violation of 8 U.S.C. § 1326(a) and (b)(2).  The presentence report (PSR) recommended a base offense level of 8 pursuant to Sentencing Guideline § 2L1.2(a), and a 12-level "crime of violence" enhancement pursuant to § 2L1.2(b)(1)(A)(ii), concluding that Bernel-Aveja's 1996 Ohio conviction for third-degree burglary constituted a "crime of violence" for which Bernel-Aveja received no criminal history points.  After applying a 3-level reduction for acceptance of responsibility, the PSR calculated a total offense level of 17.  With a recommended criminal history category of III, the PSR calculated Bernel-Aveja's advisory Guidelines sentencing range to be 30 to 37 months of imprisonment.

Bernel-Aveja filed written objections to the PSR's designation of his prior conviction as a "crime of violence."  Pertinent to this appeal, Bernal argued that the Ohio offense did not qualify as the enumerated offense of "burglary of a dwelling" because Ohio permits conviction "even though the defendant forms the intent to commit a crime only after the trespass."

Without specifically addressing Bernel-Aveja's argument respecting the timing of intent for purposes of generic burglary, the district court applied the crime of violence enhancement and imposed a within-Guidelines sentence of 37 months of imprisonment, followed by a three-year term of supervised release.  Bernel-Aveja has appealed.

## II

The Sentencing Guidelines provision applicable to Bernal-Aveja's conviction for illegal reentry after deportation was the version of § 2L1.2 in

No. 15-20308

effect in June 2015, when he was sentenced. It directed that the offense level should be increased by 12 if the defendant was previously convicted of a felony described in subsection (b)(1)(A) that did not receive criminal history points under Chapter Four of the Guidelines.[2] A "crime of violence" was among the qualifying felony offenses described in that subsection,[3] and the definition of "crime of violence" included "burglary of a dwelling."[4]

The sole issue in this appeal is whether the district court erred in concluding that Bernel-Aveja's 1996 Ohio burglary conviction constituted "burglary of a dwelling," within the meaning of § 2L1.2 of Guidelines in effect

---

[2] *See* U.S. SENTENCING GUIDELINES MANUAL § 2L1.2(b)(1)(A) (U.S. SENTENCING COMM'N 2014), which provided:

(b)    Specific Offense Characteristic

(1) Apply the Greatest:

If the defendant previously was deported, or unlawfully remained in the United States, after—

(A) a conviction for a felony that is (i) a drug trafficking offense for which the sentence imposed exceeded 13 months; (ii) a crime of violence; (iii) a firearms offense; (iv) a child pornography offense; (v) a national security or terrorism offense; (vi) a human trafficking offense; or (vii) an alien smuggling offense, increase by **16** levels if the conviction receives criminal history points under Chapter Four or by **12** levels if the conviction does not receive criminal history points. . . .

[3] *See id.*

[4] *See id.* cmt. 1(B)(iii):

"Crime of violence" means any of the following offenses under federal, state, or local law: murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses (including where consent to the conduct is not given or is not legally valid, such as where consent to the conduct is involuntary, incompetent, or coerced), statutory rape, sexual abuse of a minor, robbery, arson, extortion, extortionate extension of credit, burglary of a dwelling, or any other offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another.

3

when he was sentenced.[5] "We review a district court's interpretation and application of the guidelines *de novo*"[6] when, as here, there was an objection in the district court that preserved the issue for appeal.

The judgment of conviction regarding Bernel-Aveja's 1996 offense establishes that he pleaded guilty to burglary in the third degree under Ohio Revised Code section 2911.12.[7] The Ohio legislature amended section 2911.12 after Bernel-Aveja committed the offense in 1996 but prior to the entry of his guilty plea. However, that amendment is irrelevant to the questions before us, and both parties agree that we should consider the statute prior to its amendment. When Bernel-Aveja committed the 1996 offense, section 2911.12 provided in pertinent part:

> (A) No person, by force, stealth, or deception, shall do any of the following:
>
> (1) Trespass in an occupied structure . . . with purpose to commit therein any theft offense or any felony;
>
> (2) Trespass in a permanent or temporary habitation of any person when any person is present or likely to be present, with purpose to commit in the habitation any misdemeanor that is not a theft offense;

---

[5] *Id.* In two unpublished opinions, this court has held that other Ohio burglary provisions that prohibit trespass into an "occupied structure," which is by statutory definition not limited to structures used for human habitation, *see* OHIO REV. CODE ANN. § 2909.01(C) (West 2006 & Supp. 2016), do not categorically qualify as burglary of a *dwelling*. *See United States v. Ramirez*, 344 F. App'x 962, 963-64 (5th Cir. 2009) (per curiam) (vacating a sentence enhancement based on a prior conviction under OHIO REV. CODE ANN. § 2911.11(A)(1)); *United States v. Rees*, 233 F. App'x 362, 363-64 (5th Cir. 2007) (per curiam) (vacating a sentence enhancement based on a prior conviction under OHIO REV. CODE ANN. § 2911.12(A)(3)). Bernel-Aveja's statute of conviction lacks the "occupied structure" term and instead proscribes trespass of a "permanent or temporary habitation." Bernel-Aveja does not argue that a "permanent or temporary habitation" applies to non-dwelling structures and is therefore broader than the "dwelling" element. Rather, he appears to concede the issue.

[6] *United States v. Bonilla*, 524 F.3d 647, 651-52 (5th Cir. 2008).

[7] OHIO REV. CODE ANN. § 2911.12 (West 1990) (amended July 1, 1996).

No. 15-20308

(3) Trespass in a permanent or temporary habitation of any person when any person is present or likely to be present.

. . . .

(C) Whoever violates this section is guilty of burglary. A violation of division (A)(1) is an aggravated felony of the second degree. A violation of division (A)(2) of this section is a felony of the third degree. A violation of division (A)(3) of this section is a felony of the fourth degree.[8]

Bernel-Aveja and the Government agree that he was convicted under subsection (2) of section 2911.12 because the Ohio judgment of conviction reflected that his offense was a third degree felony. The term "trespass" obtains its meaning from Ohio's criminal trespass statute, which provides: "(A) No person, without privilege to do so, shall do any of the following: (1) Knowingly enter or remain on the land or premises of another . . . ."[9]

After incorporating the elements of "criminal trespass" into section 2911.12, the Ohio burglary statute at issue provides:

(A) No person, by force, stealth, or deception, shall . . .

(2) [without privilege to do so, knowingly enter or remain on the land or premises of another] in a permanent or temporary habitation of any person when any person is present or likely to be present, with purpose to commit in the habitation any misdemeanor that is not a theft offense.

Bernel-Aveja contends that "burglary of a dwelling," as used in the Guidelines, requires the defendant to have the intent to commit a crime when unlawfully entering the dwelling. Because the Supreme Court of Ohio has

---

[8] *Id.*

[9] OHIO REV. CODE ANN. § 2911.21; *see also State v. Clelland*, 615 N.E.2d 276, 287 (Ohio Ct. App. 1992) (explaining that the term "trespass" in section 2911.12 is defined in section 2811.21).

5

construed language in another statute[10] that is virtually identical to the language at issue in section 2911.12 to mean that the intent to commit a crime may be formed at any time during the trespass,[11] Bernal-Aveja contends that section 2911.12 is overly broad and criminalizes conduct that the generic offense of burglary does not. Therefore, he contends, his conviction was not for a "crime of violence" under § 2L1.2 of the Guidelines.

## III

One of the Government's arguments is that when Bernel-Aveja was convicted in 1996, the Ohio intermediate courts of appeals were divided on the issue of when a defendant must form the requisite intent under section 2911.12.[12] The Government submits that we should therefore rely on the law prevailing in 1996 in the Tenth District of Ohio, the district in which Bernel-Aveja was convicted. The Tenth District Court of Appeals had held that "the intent with which a person forcibly trespasses in an occupied structure is that which he had in mind at the time of the entry, not one which he may have formed later."[13] However, this authority—*State v. Flowers*—was expressly overruled by the Ohio Supreme Court in *State v. Fontes*.[14]

The Ohio Supreme Court's decision in *Fontes* did not change the law; it construed an existing Ohio statute. The *Fontes* decision resolved a conflict among Ohio intermediate appellate courts. As the Supreme Court of Ohio has explained, "[t]he general rule is that a decision of a court of supreme

---

[10] *See* OHIO REV. CODE ANN. § 2911.11(A)(1).

[11] *See State v. Fontes*, 721 N.E.2d 1037, 1040 (Ohio 2000) (construing OHIO REV. CODE ANN. § 2911.11(A)).

[12] *See Clelland*, 615 N.E.2d at 285-86 & n.3 (collecting cases); *see also In re L.D.*, 626 N.E.2d 709, 709 (Ohio Ct. Com. Pl. 1993) (observing that Ohio courts are "inexplicably split in their resolution" of the timing-of-intent issue).

[13] *State v. Flowers*, 475 N.E.2d 790, 792 (Ohio Ct. App. 1984).

[14] *See Fontes*, 721 N.E.2d at 1040 (holding that "it therefore follows that we are not persuaded by the judgment[] of the court[] of appeals in . . . [*State v.*] *Flowers*").

jurisdiction overruling a former decision is retrospective in its operation, and the effect is not that the former was bad law, but that it never was the law."[15] The elements of Bernel-Aveja's offense are determined by consulting the statute, as construed by the Supreme Court of Ohio.[16]

The Government's position would also produce the anomalous result that for convictions pre-dating *Fontes*, the crime-of-violence enhancement would depend on which Ohio court was the court of conviction. A defendant that pleaded guilty in the Tenth District of Ohio before *Fontes* issued may receive the 12-level enhancement at issue in this case, while a defendant that pleaded guilty in an adjacent district would not.

In *Fontes*, the defendant was convicted of rape and aggravated burglary.[17] Though the facts were disputed, there was evidence that the defendant, who was acquainted with the victim, entered her unlocked apartment uninvited while the victim was sleeping under the influence of pain medication, and the defendant performed nonconsensual oral sex upon her.[18] The jury was instructed that the defendant "need not possess the purpose to commit a criminal offense prior to trespassing into an occupied structure but could form the purpose to commit a criminal offense while the trespass is in progress."[19] The Ohio Supreme Court upheld the conviction, holding that "a defendant may form the purpose to commit a criminal offense at any point

---

[15] *Peerless Elec. Co. v. Bowers*, 129 N.E.2d 467, 468 (Ohio 1955) (per curiam).

[16] *See, e.g., Johnson v. United States*, 559 U.S. 133, 136-38 (2010) (relying on a Florida Supreme Court decision which post-dated the conviction at issue to define the elements of a Florida offense); *see also Mathis v. United States*, 136 S. Ct. 2243, 2256 (2016); *cf. Johnson v. Fankell*, 520 U.S. 911, 916 (1997) ("Neither this Court nor any other federal tribunal has any authority to place a construction on a state statute different from the one rendered by the highest court of the State.").

[17] *Fontes*, 721 N.E.2d at 1038.

[18] *Id*.

[19] *Id*. at 1039.

during the course of a trespass."[20] The Ohio Supreme Court has subsequently reiterated that "[o]ur cases make clear that the state was required to show that [the defendant] invaded the dwelling for the purpose of committing a crime or that he formed that intent during the trespass."[21]

Though *Fontes* and the subsequent Ohio Supreme Court decision concerned convictions under Ohio Revised Code section 2911.11,[22] it is undisputed that the holdings in those cases regarding the timing of intent apply to section 2912.12 as well because both statutes use the defined term of "trespass" and include similar intent elements.[23]

We must determine whether section 2911.12 is overly inclusive and does not come within the generic meaning of "burglary of a dwelling" since under that section, the intent to commit a crime may be formed during the trespass and not necessarily at the time of entry.

## IV

The Guidelines do not define the offense denominated in §2L1.2 as "burglary of a dwelling." We determine the elements of an offense enumerated in a Guidelines provision that is not expressly defined by ascertaining its generic, contemporary meaning.[24] When we have determined the generic elements of an offense, we generally employ the "categorical" approach to

---

[20] *Id.* at 1040.

[21] *State v. Gardner*, 889 N.E.2d 995, 1002 (Ohio 2008) (citing *Fontes*, 721 N.E.2d 1037).

[22] *See Gardner*, 889 N.E.2d at 998-99; *Fontes*, 721 N.E.2d at 1037.

[23] *Compare* OHIO REV. CODE ANN. § 2911.11(A) (West 2006) ("No person, by force, stealth, or deception, shall trespass in an occupied structure . . . , when another person other than an accomplice of the offender is present, with purpose to commit in the structure . . . any criminal offense . . . .") *with* OHIO REV. CODE ANN. § 2911.12(A)(2) (West 1990) ("No person, by force, stealth, or deception, shall . . . (2) Trespass in a permanent or temporary habitation of any person when any person is present or likely to be present, with purpose to commit in the habitation any misdemeanor that is not a theft offense."); *see also State v. Evett*, No. 14CA0008-M, 2015 WL 4069588, at *3 (Ohio Ct. App. July 6, 2015) (applying *Fontes* to a conviction under § 2911.12(A)(1)).

[24] *See, e.g., United States v. Ortega-Gonzaga*, 490 F.3d 393, 394 (5th Cir. 2007).

compare the elements of the state offense to the elements of the generic offense.[25] As the Supreme Court has often explained, "[u]nder this approach we look 'not to the facts of the particular prior case,' but instead to whether 'the state statute defining the crime of conviction' categorically fits within the 'generic' federal definition of a corresponding" offense.[26] "Because we examine what the state conviction necessarily involved, not the facts underlying the case, we must presume that the conviction 'rested upon [nothing] more than the least of th[e] acts' criminalized, and then determine whether even those acts are encompassed by the generic federal offense."[27] However, this "is not an invitation to apply 'legal imagination' to the state offense; there must be 'a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime.'"[28]

We held in *United States v. Herrera-Montes* that the generic definition of burglary arrived upon by the Supreme Court in *United States v. Taylor* "requires that the defendant intend to commit a crime at the time of unlawful entry or remaining in."[29] Our decision in *Herrera-Montes*, and our subsequent

---

[25] *See, e.g.*, *United States v. Pascacio-Rodriguez*, 749 F.3d 353, 358 (5th Cir. 2014).

[26] *Moncrieffe v. Holder*, 133 S. Ct. 1678, 1684 (2013) (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 186 (2007)); *see also Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016).

[27] *Moncrieffe*, 133 S. Ct. at 1684 (quoting *Johnson v. United States*, 559 U.S. 133, 137 (2010)).

[28] *Id.* at 1684-85 (quoting *Duenas-Alvarez*, 549 U.S. at 193).

[29] 490 F.3d 390, 392 (5th Cir. 2007); *see also United States v. Fambro*, 526 F.3d 836, 850 (5th Cir. 2008) (noting in dicta in a case involving the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), that "[w]e have held that '*Taylor* requires that the defendant intend to commit a crime at the time of unlawful entry or remaining in'") (quoting *Herrera-Montes*, 490 F.3d at 392); *United States v. Constante*, 544 F.3d 584, 586, 587 (5th Cir. 2008) (per curiam) (in a case arising under the ACCA, holding that conviction for "enter[ing] a building or habitation and commit[ting] or attempt[ing] to commit a felony, theft, or an assault," under TEX. PENAL CODE ANN. § 30.02(a)(3), was not generic burglary because it did not contain the element of intent to commit a crime "at the moment of entry") (citing *Herrera-Montes*, 490 F.3d at 392).

decision in *United States v. Constante*,[30] govern this case. The statutory subsections under consideration in *Herrera-Montes* and *Constante* were not "remaining in" provisions,[31] while the Ohio statute under which Bernel-Aveja was convicted was a "remaining in" statute. Nevertheless, our statements in *Herrrera-Montes* and in *Constante*—which note that when a conviction is for burglary committed by unlawful entry, the intent to commit a crime on the premises must be formed by the time of entry—were not dicta and are binding on this court because they were essential to the holdings in those cases.[32]

The Tennessee statutory provision under which the defendant in *Herrrera-Montes* had previously been convicted defined the offense of conviction as follows:  "(a) A person commits burglary who, without the effective consent of the property owner . . . (3) [e]nters a building and commits or attempts to commit a felony, theft, or assault . . . ."[33] We held that because this provision did not require intent "to commit a crime at the time of unlawful entry or remaining in" the offense was not a crime of violence under § 2L1.2.[34] Though we did not expressly say so, the commission or attempted commission of "a felony, theft, or assault" constituted the "intent" aspect of the Tennessee offense, since intent must be formed at least by the time the person "commits or attempts to commit" one of the offenses enumerated in the Tennessee statute.  The *Herrera-Montes* decision offered as a hypothetical example

---

[30] 544 F.3d at 586-87.

[31] *See id.* at 585 (addressing TEX. PENAL CODE ANN. § 30.02(a)(3)); *Herrera-Montes*, 490 F.3d at 391 (addressing TENN. CODE ANN. § 39-14-402(a)(3)).

[32] *See United States v. Segura*, 747 F.3d 323, 328 (5th Cir. 2014) ("A statement is dictum if it could have been deleted without seriously impairing the analytical foundations of the holding and being peripheral, may not have received the full and careful consideration of the court that uttered it.  A statement is not dictum if it is necessary to the result or constitutes an explication of the governing rules of law.") (internal quotation marks omitted) (quoting *Int'l Truck & Engine Corp. v. Bray*, 372 F.3d 717, 721 (5th Cir. 2004)).

[33] TENN. CODE ANN. § 39-14-402(a)(3).

[34] *Herrera-Montes*, 490 F.3d at 392.

"teenagers who unlawfully enter a house only to party, and only later decide to commit a crime," opining that they "are not common burglars" in such a scenario.[35]  Because the Tennessee statute did not require intent to commit a crime to have been formed at the time of entry, this court vacated the sentence and remanded for resentencing.[36]

In *Constante* we held that a particular Texas burglary offense "is not a generic burglary under the *Taylor* definition because it does not contain an element of intent to commit a [crime] at the moment of entry."[37]  The Texas offense at issue was set forth in Texas Penal Code § 30.02(a)(3), which criminalized "enter[ing] a building or habitation and commit[ting] or attempt[ing] to commit a felony, theft, or an assault."[38]  We held that this offense was not a "violent felony" under the ACCA.[39]

In the present case, the elements of the Ohio offense for which Bernal-Aveja was convicted are found in two separate statutes.[40]  The "remaining in" alternative to "entry" is partially set forth within the definition of "trespass," found in section 2911.21(A).[41]  These statutes do not appear to define two separate offenses, such that entering without privilege is necessarily a separate offense from remaining without privilege, and jury unanimity would be required as to whether unlawful entry or unlawful remaining in, or both, occurred.[42]  In any event, there is no indication in the record before us that

---

[35] *Id.*

[36] *Id.*

[37] *United States v. Constante*, 544 F.3d 584, 587 (5th Cir. 2008) (per curiam).

[38] *Id.* at 585 (construing TEX. PENAL CODE ANN. § 30.02(a)(3)).

[39] *Id.* 587.

[40] OHIO REV. CODE ANN. § 2911.12 (West 1990) (amended July 1, 1996), and § 2911.21(A)(1).

[41] *Id.* § 2911.21(A)(1) ("No person, without privilege to do so, shall do any of the following:  (1) [k]nowingly enter or remain on the land or premises of another . . . .").

[42] *See Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016) (explaining how to determine if a statute is divisible, which means that it sets forth more than one offense).

Bernal-Aveja was convicted of unprivileged "remaining in" rather than unprivileged entry. Therefore, we must assume that Bernal-Aveja could have been convicted of unlawful entry, rather than unlawful "remaining in."[43] Ohio law permits the factfinder to find that the defendant unlawfully entered a dwelling and thereafter formed the intent to commit a crime.[44] Therefore, based on the holding in *Herrera-Montes*, the Ohio offense is overly broad because it is not congruent with generic burglary.

The fact that we recognized in *Herrera-Montes* that the generic definition of burglary could have a "remaining in" alternative does not affect the actual holding in that case or its applicability to the present case. We said in *Herrera-Montes* that "*Taylor* requires that the defendant intend to commit a crime at the time of unlawful entry into or remaining in."[45] We did not clearly indicate what we considered the elements of a "remaining in" generic burglary to be. Conceivably, the offense of burglary by unlawfully "remaining in" may occur after unlawfully entering or after lawfully entering. A classic example of lawful entry but unlawful remaining in would be when a person enters a bank during regular hours then conceals himself with the intent to commit theft after the bank closes. As noted, our decision in *Herrera-Montes* is not clear as to how we would define a "remaining in" generic burglary offense, though there was a discussion in *Herrera-Montes* of "remaining in" statutes in a footnote and a reference to a discussion in *Herrera-Montes*'s companion case, *Ortega-Gonzaga*.[46] But even if we were to confine the definition of a "remaining in" generic burglary to situations in which entry was lawful and only the remaining in was unlawful, the Ohio statute at issue does not appear to require

---

[43] *See Moncrieffe v. Holder*, 133 S. Ct. 1678, 1684 (2013).

[44] *See State v. Fontes*, 721 N.E.2d 1037, 1040 (Ohio 2000).

[45] *United States v. Herrera-Montes*, 490 F.3d 390, 392 (5th Cir. 2007).

[46] *See Herrera-Montes*, 490 F.3d at 392 n.1 (citing *United States v. Ortega-Gonzaga*, 490 F.3d 393, 396 & n.5 (5th Cir. 2007)).

the factfinder to choose between two alternative offenses of unlawful entry or lawful entry but unlawfully remaining in. For example, it appears that under the Ohio definition of trespass, some jurors could find that a person unlawfully entered while others could find he lawfully entered but unlawfully remained on the premises. Similarly, unanimity as to when the intent to commit a crime while on the premises does not appear to be required under Ohio law.[47] Therefore, the Ohio offense for which Bernel-Aveja was convicted could have consisted of unlawful entry with the intent to commit a crime on the premises formed after that unlawful entry. This offense does not come within the "generic" definition of burglary as we articulated that definition in *Herrera-Montes*.

*     *     *

Accordingly, we VACATE Bernel-Aveja's sentence and REMAND for resentencing.

---

[47] *See Fontes*, 721 N.E.2d at 1039, 1040 (approving a trial court's instruction to a jury that "in order to be convicted of aggravated burglary, appellant need not possess the purpose to commit a criminal offense prior to trespassing into an occupied structure but could form the purpose to commit a criminal offense while the trespass is in progress").

No. 15-20308

PATRICK E. HIGGINBOTHAM, Circuit Judge, concurring in the judgment:

Today our Court is urged to tread a path that defies the overarching purpose of congressionally authorized enhancements of criminal sentences in federal court. Congress authorizes enhancement of a sentence if the defendant has prior convictions of certain crimes, including state-court convictions. These enhancements lie in a larger matrix of sentencing guidelines. The guidelines form a large pattern of sentencing regulation whose very structure was born of the effort to achieve sentencing fairness among defendants by assuring that the conduct made criminal had equal weight across all defendants. When a sentencing court looks at prior criminal conduct captured in state-court convictions, varied labels among the states for the same criminal conduct challenge its effort. The fix was to adopt a generic federal metric—here, for burglary. And to assure that all defendants were treated the same for the same conduct, a state-court label of a crime would not control. For example, a state opting to expand its definition of burglary to include a petty theft committed while trespassing, as it is free to do, would create disparities in sentencing defendants who have engaged in quite different conduct.

All this is rote. But much follows from these basic principles of evenhanded sentencing and their deploy in the effort to mitigate the corrosive bite of disparity into the reality and presentment of an evenhanded judiciary. It is apparent that the effort is ill-served by gathering as many states as possible under a common label. That our federal template is not met by all states is no failure. To the contrary, sweeping all state definitions of "burglary" into the federal rule is a pursuit for a "uniformity" that defies the central purpose of assigning similar weight in sentencing to similar conduct. Stated directly, it confounds the congressional purpose. These realities must inform our reading of the Supreme Court's generic formulation.

14

No. 15-20308

The federal circuits differ over the meaning of the phrase "remaining in" in the Supreme Court's generic definition of burglary.[1] Broadly speaking, circuits offer two competing views. The first view is that the act of "remaining in" a building for purposes of generic burglary "is a discrete event that occurs at the moment when a perpetrator, who at one point was lawfully present, exceeds his license and overstays his welcome."[2] The oft-given example is the bank customer who enters during business hours, then hides until after closing, so that when the bank is empty, he can take the bank's money.[3] Under this view, the act of "remaining in" occurs at a discrete point in time, and to constitute burglary, the perpetrator must have intended to commit a further crime at that discrete point.[4]

The competing view interprets "remaining in" to be a continuous undertaking or condition that exists for the entire duration that a perpetrator is inside of a building.[5] Under this view, if at any point during a trespass the perpetrator forms the intent to commit a further crime, he converts his presence from a trespass into a full-blown burglary because the intent to commit a further crime was formed "*while* remaining in."[6] By this view, the perpetrator need not have had criminal intent at the time the trespass began, he need only have developed it at some point during the trespass—even

---

[1] *See Taylor v. United States*, 495 U.S. 575, 598 (1990) ("[T]he generic, contemporary meaning of burglary contains at least the following elements: an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime.").

[2] *United States v. McArthur*, 836 F.3d 931, 944 (8th Cir. 2016).

[3] 3 WAYNE R. LAFAVE, SUBSTANTIVE CRIMINAL LAW § 21.1(b) (2d ed.).

[4] *Id.* ("This means, of course, that the requisite intent to commit a crime within need only exist at the time the defendant unlawfully remained within.").

[5] *See United States v. Bonilla*, 687 F.3d 188, 193-94 (4th Cir. 2012).

[6] *Id.* at 194 (emphasis added).

15

immediately prior to committing the further crime inside the building.[7] As the Ohio Supreme Court explains its state law, "a person . . . is continuing a criminal trespass so long as he is there without permission. Thus, if during the course of this trespass a defendant forms the purpose to commit a felony offense, the crime of aggravated burglary is committed at that time."[8] This view criminalizes conduct more broadly.

We must decide which of the two views the Supreme Court intended to encapsulate when it included "remaining in" as an alternative to "entry" in its generic definition of burglary. The answer has relevance because a minority of states have given the phrase "remaining in" in their burglary statutes the broad interpretation—the survey of the special concurrence supposedly identifies fourteen. All else equal, those states' burglary convictions fall within generic burglary only if the Supreme Court's "remaining in" language in the generic definition is given the same, broad construction. Additionally, two states have enacted "burglary" provisions that criminalize no more than unlawful entry and subsequent commission of a crime;[9] burglary convictions under those provisions similarly come within generic burglary only through the "remaining in" alternative construed broadly.

We took the narrower approach to generic burglary's "remaining in" language in *United States v. Herrera-Montes*.[10] There, we were confronted with whether the Tennessee statute cited above, which is labeled "burglary" but criminalizes nothing more than committing a crime while being a trespasser,

---

[7] *See, e.g.*, *State v. Fontes*, 721 N.E.2d 1037, 1038-40 (Ohio 2000) (trespasser who spontaneously decided to rape inhabitant upon discovering her sleeping became a burglar under Ohio law as a result).

[8] *Id.* at 1039-40.

[9] TENN. CODE ANN. § 39-14-402(a)(3) ("A person commits burglary who, without the effective consent of the property owner: . . . Enters a building and commits or attempts to commit a felony, theft or assault."); TEX. PENAL CODE § 30.02(a)(3) (similar).

[10] 490 F.3d 390 (5th Cir. 2007).

was generic burglary for the purposes of the Sentencing Guidelines.[11] That Tennessee provision could have come within generic burglary only under a broad reading of "remaining in" in the generic definition. We rejected that broad reading, explaining disapprovingly that "if the intent could be formed anytime, then every crime committed after an unlawful entry or remaining in would be burglary."[12] A contrary holding would have swept too broadly, giving the same weight to criminal conduct having in common only the label of burglary.

The special concurrence calls *Herrera-Montes*'s discussion of the "remaining in" alternative of generic burglary "offhanded," "entirely gratuitous," and "entirely unnecessary" dicta. Yet, *the very cases that it advocates this circuit follow* acknowledge that statutes like Tennessee's can be generic burglary only under the remaining-in alternative.[13] The special concurrence's conclusion that *Herrera-Montes* opined on an issue not before it, which focuses only on the fact that the Tennessee statute does not contain the words "remaining in," is therefore erroneous.

That precedent disposes of this appeal. Bernel-Aveja's statute of conviction, Ohio third-degree burglary, incorporates the phrase "remaining in," and the Ohio Supreme Court has ascribed to it the broader reading such that it criminalizes conduct every bit as broadly as the Tennessee provision in

---

[11] *Id.* at 391 (citing TENN. CODE ANN. § 39-14-402(a)(3)).

[12] *Herrera-Montes*, 490 F.3d at 392 n.1.

[13] *See United States v. Priddy*, 808 F.3d 676, 685 (6th Cir. 2015) ("And, burglary under [Tenn. Code Ann.] § 39–14–402(a)(3) is also *a "remaining-in" variant of generic burglary* because someone who enters a building or structure and, while inside, commits or attempts to commit a felony will necessarily have remained inside the building or structure to do so." (emphasis added)); *Bonilla*, 687 F.3d at 194 ("[A] defendant convicted under [Tex. Penal Code] section [30.02](a)(3) necessarily developed the intent to commit the crime *while remaining in the building*, if he did not have it at the moment he entered." (emphasis added)).

No. 15-20308

*Herrera-Montes*.[14] Both statutes of conviction are broader than generic burglary, and cannot support a sentencing enhancement as the enumerated crime of "burglary of a dwelling."

The special concurrence calls for en banc departure from this precedent, preferring the broad reading of "remaining in" burglary. It faults the narrow view for failing to include all such state "burglary" convictions within the generic definition. That position confounds the purpose of evenhanded sentencing sought after by the Sentencing Guidelines and related statutes. It also fouls the mandate of *Taylor* itself.

The Supreme Court's discussion in *Taylor* undermines the special concurrence's misplaced emphasis on not allowing any states to be "left out" of burglary sentencing enhancements. The Court was clear to the point of redundancy that "the meaning of 'burglary' for purposes of [the ACCA]" does not "depend on the definition adopted by the State of conviction."[15] The Court specifically cited multiple examples of states that it believed defined burglary too broadly to come within the generic definition.[16] It concluded that "'burglary' in [the ACCA] must have some uniform definition independent of the labels employed by the various States' criminal codes."[17] The Court recently reaffirmed that "the label a State assigns to a crime—whether 'burglary,' 'breaking and entering,' or something else entirely—has no relevance to whether that offense is an ACCA predicate."[18]

---

[14] *See Fontes*, 721 N.E.2d at 1040 ("Accordingly, we hold that for purposes of defining the offense of aggravated burglary pursuant to R.C. 2911.11, a defendant may form the purpose to commit a criminal offense at any point during the course of a trespass.").

[15] *Taylor*, 495 U.S. at 590.

[16] *Id.* at 591.

[17] *Id.* at 592.

[18] *Mathis v. United States*, 136 S. Ct. 2243, 2251 (2016).

No. 15-20308

The Court declined to incorporate the state definitions of burglary into the ACCA primarily because "[t]hat would mean that a person convicted of unlawful possession of a firearm would, or would not, receive a sentence enhancement based on exactly the same conduct, depending on whether the State of his prior conviction happened to call that conduct 'burglary.'"[19] The position advocated by the special concurrence leads to precisely that undesirable result: teenagers who remain in a house beyond their invitation intending only to party, then later decide to steal, earn themselves a burglary conviction in (among other states) Ohio, Texas, and Tennessee, but not in the majority of states. Under the special concurrence's view, whether those identical perpetrators who conducted themselves identically have committed "violent felonies" under the ACCA and Sentencing Guidelines would depend entirely on the jurisdiction of conviction—an arbitrary distinction that the Court found it "implausible" for Congress to have intended.[20]

That a small number of states' burglary convictions might be excluded from the generic definition of burglary for purposes of sentencing enhancement is not an alarming result. To the contrary, it is a desired by-product of *Taylor*. The Supreme Court contemplated that some state burglary convictions would fall outside of its generic definition due to the various idiosyncrasies and vagaries of state burglary statutes.[21] The select few states who interpret their burglary statutes as nothing more than "a location enhancement for what might otherwise be petty theft"[22] need not, and should not, frustrate *Taylor*'s

---

[19] *Taylor*, 495 U.S. at 590-91.

[20] *Id.* at 590.

[21] *See Taylor*, 495 U.S. at 590-92.

[22] Helen A. Anderson, *From the Thief in the Night to the Guest who Stayed Too Long: The Evolution of Burglary in the Shadow of the Common Law*, 45 IND. L. REV. 629, 647 (2012).

19

effort to fend off disparate federal sentencing from the want of common meaning in labeling criminal conduct by the states.

The reading of generic burglary proffered by the special concurrence strains common sense, an elusive element in federal sentencing today. The Supreme Court made clear that generic burglary requires "an unlawful or unprivileged entry into, or remaining in, a building or other structure, *with* intent to commit a crime."[23] "Remaining in" is used as an alternative means to "entry," and the two are set in parallel with one another. A natural reading suggests that both refer to the *initiation* of the trespass, and the use of the dependent clause "*with* intent to commit a crime" suggests that the intent must exist contemporaneously with that initiation. Instead, the special concurrence would have us read "remaining in" to reach every crime committed while trespassing inside a building, regardless when intent to commit that crime was formed. Indeed, the special concurrence's reading of "remaining in" renders "entry" superfluous in the Court's generic definition because under that view, every unlawful entry becomes unlawful remaining in immediately on entry.[24]

The circuits that have been persuaded to adopt the broad reading of "remaining in" generic burglary have done so because the Supreme Court, in announcing the categorical approach, instructed courts that "the exact formulations may vary" and to look whether the statute "corresponds in substance to the generic meaning."[25] I do not take that to be a charge to dispense with the most fundamental character of burglary: that the perpetrator trespass while already harboring intent to commit a further crime. Rather, the language was to disavow any reliance on formal labels. The Court's

---

[23] *Taylor*, 495 U.S. at 598 (emphasis added).

[24] *McArthur*, 836 F.3d at 944.

[25] *See Priddy*, 808 F.3d at 685 (citing *Taylor*, 495 U.S. at 602); *Bonilla*, 687 F.3d at 194 (citing *Taylor*, 495 U.S. at 599).

categorical approach is quite exacting, as has recently been iterated.[26] Indeed, slight expansion beyond generic burglary takes a statute of conviction outside the definition.[27] Surely so crimes lacking the fundamental character of burglary.

Contemporary burglary statutes have developed significantly from their common law roots; the Court's generic definition recognizes as much.[28] But however states may elect to define burglary, the federal generic definition must in a discernable way present as kindred of the common law crime of burglary, albeit shed of strictures such as nighttime and occupied dwelling—something that the interpretation being urged in the special concurrence fails to do. It is entirely each state's prerogative how broadly to construe its burglary statute, but the generic metric of burglary should not be read to invite similar treatment for dissimilar offenders. And a shoplifter is a world apart from one who enters or remains in a building with intent to steal—different enough, at least, that Congress focused its efforts to enhance sentences on the wave of professional criminals whose main financial support rests on burglary.[29]

Assuming the accuracy of the survey undertaken by the special concurrence, fourteen states have given the phrase "remaining in" in their burglary statutes the broad construction. Which side of the instant debate one prefers only has the potential to affect whether those fourteen state burglary statutes are included as generic burglary; the special concurrence seeks to include them all, and the view expressed here may have the effect of excluding them. Some of them may already be excluded from generic burglary for a

---

[26] *See Mathis*, 136 S. Ct. at 2248-50.

[27] *Id.* at 2250 (Iowa burglary not generic burglary because it includes unlawful entry into vehicles, not just buildings); *Taylor*, 495 U.S. at 591 (California burglary not generic burglary because it supports a conviction even when entry was lawful).

[28] *See Taylor*, 495 U.S. at 592-96.

[29] *Id.* at 584-85.

different reason entirely. It is nigh impossible to determine in a prospective manner the subtle contours of what every state burglary provision requires. This is precisely the reason that the Supreme Court sought to free federal courts from the burden of undertaking extensive state surveys.

I must disagree with my colleague's special concurrence and with the suggestions in the panel majority's opinion that this circuit's precedent is in error. I concur in the judgment.

No. 15-20308

PRISCILLA RICHMAN OWEN, Circuit Judge, concurring:

Even though amendments to the Sentencing Guidelines effective November 1, 2016 eliminated "burglary of a dwelling" as an enumerated, predicate offense in determining whether a Sentencing Guidelines enhancement applies,[1] how courts define generic burglary continues to be of importance. "Burglary" is an enumerated predicate offense in the Armed Career Criminal Act (ACCA),[2] and the definition of "aggravated felony" for purposes of immigration laws includes "burglary."[3]

Because of the importance of the issue, I am taking the unusual step of filing a concurring opinion with the opinion I have written on behalf of the panel, after coming to the conclusion that dicta in our decision in *United States v. Herrera-Montes*[4] defined generic burglary in a way that is not supported by the Supreme Court's opinion in *Taylor v. United States*[5] or the elements of burglary set forth in statutes adopted by a majority of the States at the time the ACCA was enacted.[6] Although the statute at issue in *Herrera-Montes* criminalized only unlawful entry and was not a "remaining in" statute, the opinion in *Herrera-Montes* said that the intent to commit a crime upon the premises, which is an element of generic burglary, must exist "at the time of unlawful entry or remaining in."[7] This timing aspect of the formation of intent with regard to "remaining in" is not found in *Taylor*.

---

[1] *See* U.S. SENTENCING GUIDELINES MANUAL app. C, amend. 802, at 149-50 (U.S. SENTENCING COMM'N 2016).

[2] 18 U.S.C. § 924(e).

[3] *See* 8 U.S.C. § 1101(a)(43)(G).

[4] 490 F.3d 390 (5th Cir. 2007).

[5] 495 U.S. 575, 599 (1990) ("We conclude that a person has been convicted of burglary for purposes of a § 924(e) enhancement if he is convicted of any crime, regardless of its exact definition or label, having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime.").

[6] *See infra* Part III.

[7] *See Herrera-Montes*, 490 F.3d at 391-92.

We should have said in *Herrera-Montes* that when a statute of conviction criminalizes *only* unlawful entry, the intent to commit a crime on the premises must exist at the time of entry.  We should not have expressed an opinion as to when such an intent must be formed when a "remaining in" burglary offense is at issue.  Both *Taylor*'s generic definition of burglary and a majority of the States' burglary statutes include unlawful entry or "remaining in" in defining burglary.[8]  However, "remaining in" statutes diverge as to when intent to commit another crime on the premises must be formed, and there is no indication that when the ACCA was enacted, the criminal codes of most States agreed that intent to commit a crime on the premises must have been formed at or before the moment of unlawfully remaining in.

With great respect, JUDGE HIGGINBOTHAM's concurring opinion in the present case, mounting a defense of the opinion he authored in *Herrera-Montes*, obscures the focus of the inquiry as to what "generic" burglary requires with respect to the timing of intent.  It goes without saying that a *particular* State's definition of burglary is not controlling.[9]  Instead, the Supreme Court reasoned in *Taylor* that the generic approach to ascertaining the elements of an offense takes account of the elements of the offense shared in common among a majority of States' formulations.[10]  The Supreme Court has confirmed in subsequent opinions that to determine a generic offense's elements, the criminal codes and statutes of the states must be examined to see which

---

[8] *See infra* Parts III and IV.

[9] *See, e.g., Taylor v. United States*, 495 U.S. 575, 592 (1990) ("We think that 'burglary' in § 924(e) must have some uniform definition independent of the labels employed by the various States' criminal codes.").

[10] *See id.* at 598 ("Congress meant by 'burglary' the generic sense in which the term is now used in the criminal codes of most States."); *see also id.* at 589 ("[T]he 1984 definition of burglary shows that Congress, at least at that time, had in mind a modern 'generic' view of burglary, roughly corresponding to the definitions of burglary in a majority of the States' criminal codes.").

elements appear in "most" of them.[11]   JUDGE HIGGINBOTHAM's concurring opinion, and the dicta in *Herrera-Montes*, advocate a definition of burglary committed by unlawfully remaining in that has been adopted by approximately five (5) state statutes,[12] and there is no indication that at the time the Supreme Court set forth the elements of generic burglary in *Taylor*, most States had enacted a definition of burglary congruent with the concurring opinion's definition.   JUDGE HIGGINBOTHAM's formulation is decidedly not the majority view of when intent must be formed during the commission of burglary by unlawfully remaining in a building.

I do not advocate that generic burglary must include "all" state burglary statutes or that no state burglary statute should be "left out," as JUDGE HIGGINBOTHAM's concurring opinion asserts.[13]   I advocate only that this court adhere to the elements of generic "remaining in" burglary as expressed in *Taylor*.  When *Taylor* was decided, it appears that some States required that intent to commit a crime while unlawfully remaining in a building must be formulated at or before the time of trespass, while other States permitted such intent to be formed during the time the defendant unlawfully remained in the building.  There is no indication that the weight of authority supported one view over the other.  The generic definition of burglary is just that, generic. Generic burglary does not specify *when* intent to commit a crime on the premises must be formed.

---

[11] *See, e.g.*, *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 190, 195-96 (2007) (listing States' statutes to confirm the generic meaning of theft); *Scheidler v. National Organization for Women, Inc.*, 537 U.S. 393, 410 (2003) ("In *Taylor*, . . . we concluded that in including 'burglary' as a violent crime in 18 U.S.C. § 924(e)'s sentencing enhancement provision for felons' possessing firearms, Congress meant 'burglary' in 'the generic sense in which the term is now used in the criminal codes of most States.'" (quoting *Taylor*, 495 U.S. at 598)).

[12] *See infra* Part IV.

[13] *See ante* at p. __.

No. 15-20308

There is a split among the Circuit Courts as to whether generic burglary requires intent to commit a crime to be formed at or before the time that the presence on the property first becomes unlawful.[14]  The Fifth Circuit should join the Fourth[15] and Ninth[16] Circuits in concluding that when a statute permits burglary to be committed while unlawfully remaining in a building, intent to commit a crime while within can be formed before or after the trespass initially occurs.

## I

Ascertaining whether a prior conviction qualifies as a "crime of violence" under the Guidelines requires application of the "categorical approach," with which federal sentencing and appellate courts have wrestled for many years.[17]

---

[14] *See infra* Part V.

[15] *See United States v. Bonilla*, 687 F.3d 188, 192-93 (4th Cir. 2012).

[16] *See United States v. Reina-Rodriguez*, 468 F.3d 1147, 1155-56 (9th Cir. 2006), *overruled on other grounds by United States v. Grisel*, 488 F.3d 844 (9th Cir. 2007) (citing *Taylor v. United States*, 495 U.S. 575, 598 (1990)).

[17] *See* U.S. SENTENCING GUIDELINES MANUAL app. C, amend. 802, at 155 (U.S. SENTENCING COMM'N 2016)

> First, the Commission has received significant comment over several years from courts and stakeholders that the 'categorical approach' used to determine the particular level of enhancement under the existing guideline is overly complex and resource-intensive and often leads to litigation and uncertainty.  The existing guideline's single specific offense characteristic provides for enhancements of between 4 levels and 16 levels, based on the nature of a defendant's most serious conviction that occurred before the defendant was 'deported' or 'unlawfully remained in the United States.'  Determining whether a predicate conviction qualifies for a particular level of enhancement requires application of the categorical approach to the penal statute underlying the prior conviction. *See generally United States v. Taylor*, 495 U.S. 575 (1990) (establishing the categorical approach).  Instead of the categorical approach, the amendment adopts a much simpler sentence-imposed model for determining the applicability of predicate convictions.  The level of the sentencing enhancement for a prior conviction generally will be determined by the length of the sentence imposed for the prior offense, not by the type of offense for which the defendant had been convicted.

## No. 15-20308

The present case arises under the version of § 2L1.2 of the Guidelines that was in effect in June 2015, when Bernel-Aveja was sentenced. His base offense level was increased by 12 because of a 1996 Ohio conviction for burglary that the district court determined was a "crime of violence." At that time, the Guidelines included "burglary of a dwelling" as a "crime of violence."[18]

The 1996 judgment of conviction establishes that Bernel-Aveja pleaded guilty to burglary in the third degree, a violation of Ohio Revised Code section 2911.12.[19] He was sentenced to two years of imprisonment, suspended, and two years of probation; however, his probation was revoked in 1999, and after receiving credit for time served, he was sentenced to serve 353 days in prison.

When Bernel-Aveja committed the 1996 offense, section 2911.12 of the Ohio Code provided in pertinent part:

(A)    No person, by force, stealth, or deception, shall do any of the following:
(1) Trespass in an occupied structure . . . with purpose to commit therein any theft offense or any felony;
(2) Trespass in a permanent or temporary habitation of any person when any person is present or likely to be present, with purpose to commit in the habitation any misdemeanor that is not a theft offense;

---

[18] U.S. SENTENCING GUIDELINES MANUAL § 2L1.2(b)(1)(A) cmt. n.1(B)(iii) (U.S. SENTENCING COMM'N 2014)

> 'Crime of violence' means any of the following offenses under federal, state, or local law: murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses (including where consent to the conduct is not given or is not legally valid, such as where consent to the conduct is involuntary, incompetent, or coerced), statutory rape, sexual abuse of a minor, robbery, arson, extortion, extortionate extension of credit, burglary of a dwelling, or any other offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another.

[19] OHIO REV. CODE ANN. § 2911.12 (West 1990) (amended July 1, 1996).

No. 15-20308

(3) Trespass in a permanent or temporary habitation of any person when any person is present or likely to be present.

. . . .

(C)    Whoever violates this section is guilty of burglary. A violation of division (A)(1) of this section is an aggravated felony of the second degree. A violation of division (A)(2) of this section is a felony of the third degree. A violation of division (A)(3) of this section is a felony of the fourth degree.[20]

As Bernel-Aveja notes, it is "apparent" that he was convicted under subsection (2) of section 2911.12 because the Ohio judgment of conviction reflected that his offense was a third degree felony. A person commits "criminal trespass" under Ohio law when he or she, "without privilege to do so, . . . knowingly enter[s] or remain[s] on the land or premises of another."[21]

After incorporating the elements of "criminal trespass" into section 2911.12, the Ohio burglary statute at issue provides:

(A) No person, by force, stealth, or deception, shall . . .

(2) [without privilege to do so, knowingly enter or remain on the premises of another] in a permanent or temporary habitation of any person when any person is present or likely to be present, with purpose to commit in the habitation any misdemeanor that is not a theft offense.

## II

The definition of "crime of violence" in § 2L1.2 of the Guidelines in 2015 included "burglary of a dwelling" as an enumerated offense, but "burglary" was not defined.[22] We have held, however, with exceptions not relevant here, that "we see no reason to create a separate, parallel federal common-law definition for 'burglary'" and that "*Taylor's* definition of 'burglary' controls when defining

---

[20] *Id.*

[21] *Id.* § 2911.21(A)(1).

[22] U.S. SENTENCING GUIDELINES MANUAL § 2L1.2 cmt. n.1(1)(B)(iii) (U.S. SENTENCING COMM'N 2014).

the 'burglary' part of 'burglary of a dwelling'" under § 2L1.2 of the Guidelines.[23] To determine whether a prior conviction constitutes "burglary," courts utilize the categorical approach set forth in *Taylor*.[24]

In *Taylor*, the Supreme Court construed the ACCA[25] and held that Congress intended the term "burglary" in that legislation to mean the "generic" crime of burglary.[26]  After extensive analysis, the Court concluded that "[a]lthough the exact formulations vary, the generic, contemporary meaning of burglary contains at least the following elements:  an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime."[27]  The Court observed that a California offense that defined "burglary" "so broadly as to include shoplifting and theft of goods from a 'locked' but unoccupied automobile" would not constitute generic burglary.[28]  The Court confirmed in subsequent decisions that an offense that "criminalized entering a location . . . [lawfully] with the intent to steal" would not constitute "generic burglary because" it would "encompass[] mere shoplifting."[29] Accordingly, though intent to commit a crime is a necessary element of generic

---

[23] *United States v. Ortega-Gonzaga*, 490 F.3d 393, 395 (5th Cir. 2007) (referring to *Taylor v. United States*, 495 U.S. 575 (1990), but recognizing that in *United States v. Murillo-Lopez*, 444 F.3d 337, 344 (5th Cir. 2006), it "ma[de] sense" to "extend[] the definition of 'burglary of a dwelling' under the Guidelines to include things like tents, which the Court in *Taylor* implicitly excluded in defining 'burglary' . . . given that the court in *Murillo-Lopez* was called to define the 'of a dwelling' part of 'burglary of a dwelling'").

[24] *See United States v. Hernandez-Hernandez*, 817 F.3d 207, 212 (5th Cir. 2016) (citing *Taylor*, 495 U.S. at 602).

[25] 18 U.S.C. § 924(e).

[26] *Taylor*, 495 U.S. at 598 ("We believe that Congress meant by 'burglary' the generic sense in which the term is now used in the criminal codes of most States.").

[27] *Id*.; *see also id*. at 599 ("We conclude that a person has been convicted of burglary . . . if he is convicted of any crime, regardless of its exact definitions or label, having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime.").

[28] *Id*. at 591.

[29] *Mathis v. United States*, 136 S. Ct. 2243, 2248-49 (2016) (citing *Descamps v. United States*, 133 S. Ct. 2276, 2283-84 (2013)).

burglary, there must be an element of unlawfulness about the presence of the defendant in the building, or in our case, in the dwelling.

It is clear from *Taylor* and its progeny that if a statute criminalized *only* unlawful or unprivileged *entry* into a building with intent to commit another crime, then such an offense would be "generic burglary" under *Taylor*'s definition of "burglary." However, neither *Taylor* nor subsequent Supreme Court decisions have had occasion to decide definitively when, for purposes of generic burglary, intent must be formed if the offense was "unlawful or unprivileged . . . remaining in . . . a building or other structure, with intent to commit a crime."[30]

Bernel-Aveja's conviction under Ohio law included the elements of "without privilege to do so . . . knowingly enter[ing] or remain[ing]" in a "habitation . . . with purpose to commit in the habitation any misdemeanor that is not a theft offense."[31] The Government does not contend that the Ohio statute of conviction sets forth two separate crimes, one having as an element "enter[ing]" the habitation without privilege to do so, and the other having as an element "remain[ing in]" the habitation without privilege to do so. The Ohio conviction accordingly implicates the "remaining in" aspect of the Supreme Court's formulation of generic burglary because a jury could apparently convict under the Ohio statute if some jurors found that the entry was not privileged while others found that the remaining in was not privileged.

Neither the Supreme Court nor this court has been called upon to examine *when* the requisite intent to commit a crime must be formed if a statute criminalizes "entry into, or remaining in, a building or other structure,

---

[30] *Taylor*, 495 U.S. at 598.

[31] OHIO REV. CODE ANN. § 2911.12 (West 1990) (amended July 1, 1996), and *id*. § 2911.21(A)(1).

with intent to commit a crime."[32]  If only the words of the generic definition of burglary in *Taylor* are consulted ("an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime"[33]), there are several possibilities as to when intent might be formed.  A defendant might form the intent to commit a crime on the premises: (1) before lawfully entering, (2) after lawfully entering, (3) before unlawfully entering, (4) after unlawfully entering, (5) before unlawfully "remaining in," or (6) while unlawfully "remaining in."

The Supreme Court of Ohio has construed one of Ohio's burglary statutes[34] to mean that "a defendant may form the purpose to commit a criminal offense at any point during the course of a trespass."[35]  The parties in this case agree that this construction of when the intent to commit a crime may be formed applies equally to the requisite intent in another Ohio burglary statute, under which Bernel-Aveja was convicted.[36]  It would therefore appear that the Ohio statute at issue would encompass fact patterns, among others, in which the defendant unlawfully entered a dwelling but did not form the intent to commit a crime on the premises until after that unlawful entry, or formed the intent after lawfully entering but while unlawfully "remaining in."

---

[32] *Taylor*, 495 U.S. at 598.

[33] *Id.*

[34] OHIO REV. CODE ANN. § 2911.11(A) (West 2006 & Supp. 2016).

[35] *State v. Fontes*, 721 N.E.2d 1037, 1040 (Ohio 2000).

[36] *Compare* OHIO REV. CODE ANN. § 2911.11(A)(1) (West 2006 & Supp. 2016) ("No person, by force, stealth, or deception, shall trespass in an occupied structure . . . when another person other than an accomplice of the offender is present, with purpose to commit in the structure . . . any criminal offense . . . .") *with* OHIO REV. CODE ANN. § 2911.12(A)(2) (West 1990) ("No person, by force, stealth, or deception, shall . . . (2) Trespass in a permanent or temporary habitation of any person when any person is present or likely to be present, with purpose to commit in the habitation any misdemeanor that is not a theft offense."); *see also State v. Evett*, No. 14CA0008—M, 2015 WL 4069588, at *3 (Ohio Ct. App. 2015) (applying *Fontes* to a conviction under § 2911.12(A)(1)).

No. 15-20308

Though the Supreme Court's decision in *Taylor* does not answer the question of when intent to commit a crime must be formed when a "remaining in" statute was the basis of a prior conviction, the Court's analysis of how and why it arrived upon its generic definition of burglary provides some guidance. The Court began its interpretive process by considering the language of § 924(e), as originally enacted in 1984, and two years later, when it was amended in 1986.[37]  In its original iteration, the statute defined "burglary" as "any felony consisting of entering or remaining surreptitiously within a building that is property of another with intent to engage in conduct constituting a Federal or State offense."[38]  The 1986 amendment replaced "any felony" in that definition with "any crime punishable by a term of imprisonment exceeding one year."[39]  Five months later, the statute was again amended, and though "burglary" was retained as a predicate offense for enhancing the sentence of an armed career criminal, the express definition of burglary was deleted or omitted from the statute.[40]  The Supreme Court drew three "observations"[41] from its analysis of this history.

First, the Supreme Court concluded from the 1984 and 1986 statutory definitions and the legislative history of the subsequent 1986 amendment effectuated by the Career Criminals Act of 1986 that "Congress singled out burglary (as opposed to other frequently committed property crimes such as larceny and auto theft) for inclusion . . . because of its inherent potential for

---

[37] *Taylor v. United States*, 495 U.S. 575, 581-82 (1990) (citing Armed Career Criminal Act of 1984, Pub. L. 98-473, § 180, 398 Stat. 2185 (repealed 1986) and Firearms Owners' Protection Act, Pub. L. 99-308, § 104, 100 Stat. 458 (1986)).

[38] *Id.* at 581 (quoting § 1803, 98 Stat. at 2185 (repealed 1986)).

[39] *See id.* at 582 (quoting § 104, 100 Stat. at 458).

[40] *See id.* (citing Career Criminals Amendment Act of 1986, Pub. L. 99-570, § 1402, 100 Stat. 3207-39).

[41] *Id.* at 588.

harm to persons."[42]  The Court reasoned, "[t]he fact that an offender enters a building to commit a crime often creates the possibility of a violent confrontation between the offender and an occupant, caretaker, or some other person who comes to investigate."[43]  The Court also concluded that "Congress apparently thought that all burglaries serious enough to be punishable by imprisonment for more than a year constituted a category of crimes that shared this potential for violence and that were likely to be committed by career criminals."[44]  The Court reasoned, "[t]here never was any proposal to limit the predicate offense to some special subclass of burglaries that might be especially dangerous, such as those where the offender is armed, or the building is occupied, or the crime occurs at night."[45]

Second, the Court concluded that "the enhancement provision always has embodied a categorical approach to the designation of predicate offenses."[46] The Court reasoned that "Congress intended that the enhancement provision be triggered by crimes having certain specified elements, not by crimes that happened to be labeled 'robbery' or 'burglary.'"[47]

"Third," the Supreme Court said, "the 1984 definition of burglary shows that Congress, at least at that time, had in mind a modern 'generic' view of burglary, roughly corresponding to the definitions of burglary in a majority of the States' criminal codes."[48]  The Court deduced that "[i]n adopting this definition, Congress both prevented offenders from invoking the arcane

---

[42] *Id.*

[43] *Id.*

[44] *Id.*

[45] *Id.*

[46] *Id.*

[47] *Id.*; *cf. Descamps v. United States*, 133 S. Ct. 2276, 2287 (2013) ("Congress . . . meant [the ACCA] to function as an on-off switch, directing that a prior crime would qualify as a predicate offense in all cases or in none.").

[48] *Taylor*, 495 U.S. at 589 (1990).

technicalities of the common-law definition of burglary to evade the sentence-enhancement provision, and protected offenders from the unfairness of having enhancement depend upon the label employed by the State of conviction."[49]

The Supreme Court then concluded that "there is nothing in the history to show that Congress intended in 1986 to replace the 1984 'generic' definition of burglary with something entirely different. Although the omission of a pre-existing definition of a term often indicates Congress' intent to reject that definition . . . we draw no such inference here."[50]

The Supreme Court rejected use of the common-law definition of burglary as the definition of that term in § 924(e) for several reasons. "Most . . . States have expanded this [common-law] definition to include entry without a 'breaking,' structures other than dwellings, offenses committed in the daytime, entry with intent to commit a crime other than a felony, etc."[51] The Court observed that these "statutory development[s] . . . [have] resulted in a modern crime which has little in common with its common-law ancestor except for the title of burglary," and that "[t]he arcane distinctions embedded in the common-law definitions have little relevance to modern law enforcement concerns."[52]

After considering the history of § 924(e), and rejecting the adoption of the common-law definition of burglary, the Court concluded that "Congress meant by 'burglary' the generic sense in which the term is now used in the criminal codes of most States."[53] It then articulated the generic definition, quoting W. LaFave & A. Scott's Substantive Criminal Law for the propositions that modern statutes "generally require that the entry be unprivileged" and

---

[49] *Id.*

[50] *Id.* at 590.

[51] *Id.* at 593.

[52] *Id.*

[53] *Id.* at 598.

No. 15-20308

"typically describe the place as a 'building' or 'structure,'" and that "[t]he prevailing view in the modern codes is that an intent to commit any offense will do."[54] The Court also stated that its generic definition "approximates that adopted by the drafters of the Model Penal Code,"[55] which provided: "A person is guilty of burglary if he enters a building or occupied structure, or separately secured or occupied portion thereof, with purpose to commit a crime therein, unless the premises are at the time open to the public or the actor is licensed or privileged to enter."[56] The Court additionally stated that its generic meaning of burglary "is practically identical to the 1984 definition that, in 1986, was omitted from the enhancement provision."[57] The Court reiterated that though that definition was omitted in the 1986 amendments, "there is simply no plausible alternative that Congress could have had in mind."[58] The Court also reiterated that Congress "did not wish to specify an exact formulation that an offense must meet," and concluded that "a person has been convicted of burglary . . . if he is convicted of any crime, regardless of its exact definition or label, having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime."[59]

If we were writing on a clean slate, we would consider the Ohio burglary statute at issue in light of these teachings of the Supreme Court when presented with a "remaining in" statute.

---

[54] *Id.* (quoting W. LaFave & A. Scott, Substantive Criminal Law § 8.13(a), (c), (e) (1986).

[55] *Id.* at n.8.

[56] Model Penal Code § 221.1 (Am. Law. Inst. 1980).

[57] *Taylor,* 495 U.S. at 598.

[58] *Id.*

[59] *Id.* at 599.

35

No. 15-20308

**III**

If the generic definition of burglary in *Taylor* does not require that the intent to commit a crime be formulated before or at the time of initially remaining in a building unlawfully, then the 1996 Ohio statute has each of the elements of generic burglary formulated in *Taylor*, as modified by the Guideline's inclusion of the offense of "burglary of a dwelling." Those elements are "an unlawful or unprivileged entry into, or remaining in, a [dwelling[60]], with intent to commit a crime."[61] The question raised by this appeal is what the generic offense requires regarding the timing of the intent to commit a crime.

Because the Supreme Court concluded in *Taylor* that there was no indication "that Congress intended . . . to replace" the ACCA's 1984 statutory definition of "generic" burglary,[62] and because the Supreme Court observed that its generic definition of burglary "is practically identical to the [ACCA's] 1984 definition,"[63] it is instructive to compare the offense defined in the Ohio statute, section 2911.12, with the ACCA's 1984 definition.

The ACCA defined burglary as "any felony consisting of entering or remaining surreptitiously within a building that is property of another with intent to engage in conduct constituting a Federal or State offense."[64] Bernal-Aveja's Ohio offense was a felony. The Ohio offense was committed when a defendant "by force, stealth, or deception" and without privilege knowingly entered or remained in a habitation of any person "with purpose to commit in

---

[60] U.S. SENTENCING GUIDELINES MANUAL § 2L1.2 cmt. n.1(B)(iii) (U.S. SENTENCING COMM'N 2014).

[61] *Taylor*, 495 U.S. at 598.

[62] *Id*. at 590.

[63] *Id*. at 598.

[64] Armed Career Criminal Act of 1984, Pub. L. No. 98-473, § 1803, 98 Stat. 2185 (repealed 1986).

36

the habitation any misdemeanor."[65]   It would seem that use of force to accomplish the crime of burglary would be at least as culpable as, if not more culpable than, surreptitiously entering into or remaining on property.   The Ohio offense is substantially the same as the ACCA's 1984 definition.   With regard to *when* intent was formed, as a grammatical matter, it would appear that the 1984 ACCA's phrase "with intent to engage" would modify "remaining surreptitiously within" such that intent could be formed after entry while remaining in.

The Supreme Court concluded in *Taylor* that in the present version of the ACCA, "Congress meant by 'burglary' the generic sense in which the term is now used in the criminal codes of most States,"[66] and therefore it is also instructive to consider how "most states" defined burglary.  The *Taylor* decision cited the 1986 edition of Professor LaFave's treatise on substantive criminal law as authoritative,[67] and that treatise concluded not only that "remaining in" statutes had been adopted by many states but that "[t]his means, of course, that the requisite intent to commit a crime within need only exist at the time the defendant unlawfully remained within."[68]  The 1986 version of LaFave's treatise listed twenty-four states that had adopted "remaining in" burglary statutes.[69]  Ohio was not among them, but it is clear that the Ohio burglary statute at issue in the present case has a "remaining in" alternative means of committing burglary.[70]   The most recent edition of LaFave's treatise lists

---

[65] OHIO REV. CODE ANN. § 2911.12 (West 1990) (amended July 1, 1996).

[66] *Taylor*, 495 U.S. at 598.

[67] *Id.* at 598 & n.8.

[68] W. LAFAVE & A. SCOTT, SUBSTANTIVE CRIMINAL LAW § 8.13(b) (1986).

[69] *Id.* n.44.

[70] *See* OHIO REV. CODE ANN. § 2911.21(A)(1) (West 1990) (amended July 1, 1996) (providing that a person commits "criminal trespass" under Ohio law when she, "without privilege to do so, . . . [k]nowingly enter[s] or remain[s] on the land or premises of another").

twenty-nine states that have adopted "remaining in" statutes,[71] though it likewise failed to list the Ohio burglary statute. Professor LaFave explained, with regard to the adoption of "remaining in" statutes by so many states, that

> [t]his common statutory expansion in the definition of burglary makes great sense. A lawful entry does not foreclose the kind of intrusion burglary is designed to reach, as is illustrated by the case of a bank customer who hides in the bank until it closes and then takes the bank's money. Moreover, this expansion forecloses any argument by a defendant found in premises then closed that he had entered earlier when they were open.[72]

At least one other academic has concluded that since the time the Model Penal Code was promulgated, "the requirement of entry has become the minority approach. At least twenty-nine jurisdictions have modified the statutory entry requirement to include 'remaining unlawfully' or 'remaining.'"[73] This commentator, Professor Helen Anderson, concluded that "where the statute includes 'remaining' as an alternative to entry, the criminal intent may be formed at any time while the defendant remains on the premises and need not have been formed at the time of entry."[74]

---

[71] 3 W. LAFAVE, SUBSTANTIVE CRIMINAL LAW § 21.1(b) n.47 (2d ed.) (2016) (citing ALA. CODE § 13A-7-5; ALASKA STAT. § 11.46.300; ARIZ. REV. STAT. ANN. § 13-1506; ARK. CODE ANN. § 5-39-201; COLO. REV. STAT. ANN. § 18-4-202; CONN. GEN. STAT. ANN. § 53a-101; DEL. CODE ANN. tit. 11, § 824; FLA. STAT. ANN. § 810.02; GA. CODE ANN. § 16-7-1; HAW. REV. STAT. § 708-810; 720 ILL. COMP. STAT. ANN. 5/19-1; IOWA CODE ANN. § 713.1; KAN. STAT. ANN. § 21-5807; KY. REV. STAT. ANN. § 511.020; ME. REV. STAT. ANN. tit. 17-A, § 401; MO. ANN. STAT. § 569.160; MONT. CODE ANN. § 45-6-204; N.H. REV. STAT. ANN. § 635.1; N.J. STAT. ANN. § 2C:18-2; N.D. CENT. CODE § 12.1-22-02; OR. REV. STAT. § 164.215; S.D. CODIFIED LAWS § 22-32-1; TENN. CODE ANN. § 39-14-402; TEX. PENAL CODE ANN. § 30.02; UTAH CODE ANN. § 76-6-202; VT. STAT. ANN. tit. 13, § 1201; VA. CODE ANN. § 18.2-89; WASH. REV. CODE § 9A.52.020; WYO. STAT. ANN. § 6-3-301).

[72] W. LAFAVE & A. SCOTT, SUBSTANTIVE CRIMINAL LAW § 8.13(b) (1986).

[73] Helen A. Anderson, *From the Thief in the Night to the Guest Who Stayed Too Long: The Evolution of Burglary in the Shadow of the Common Law*, 45 IND. L. REV. 629, 645 & n.113 (2012).

[74] *Id.* at 646.

No. 15-20308

Professor LaFave's 1986 treatise expressed the view that "remaining in" statutes should not "cover certain other situations in which the unlawful remaining ought not be treated as burglary," and therefore "it is best to limit the remaining-within alternative to where that conduct is done surreptitiously."[75] An example offered of conduct that "ought not be treated as burglary" was "where a visitor in one's home becomes involved in an argument with his host, threatens to punch him in the nose and is asked to leave, and then after he does not leave continues his threats."[76] The treatise listed Model Penal Code § 221.1 and Florida and New Jersey statutes as examples with such a limitation.[77] Model Penal Code § 221.1 did not include "remaining in,"[78] so it differs from the twenty-four states that, according to LaFave's treatise, have adopted "remaining in" burglary statutes. The New Jersey statute cited by Professor LaFave does not appear, necessarily, to provide that the defendant must form the intent to commit a crime when he initially remains surreptitiously in a structure.[79]

Similarly, Professor Anderson observed more recently that "a consensual visit that turns ugly might be prosecuted as a burglary" under a statute that

---

[75] W. LAFAVE & A. SCOTT, SUBSTANTIVE CRIMINAL LAW § 8.13(b) (1986).

[76] *Id*. n.47.

[77] *Id*. n.48 (citing MODEL PENAL CODE § 221.1 (AM. LAW INST. 1980); FLA. STAT. ANN. § 810.02; N.J. STAT. ANN. 2C:18-2).

[78] *See* MODEL PENAL CODE § 221.1 (AM. LAW INST. 1980) ("A person is guilty of burglary if he enters a building or occupied structure, or separately secured or occupied portion thereof, with purpose to commit a crime therein, unless the premises are at the time open to the public or the actor is licensed or privileged to enter.").

[79] N.J. STAT. ANN. § 2C:18-2 (West 1981), which provided:

A person is guilty of burglary if, with purpose to commit an offense therein he:

> (1) Enters a structure, or a separately secured or occupied portion thereof, unless the structure was at the time open to the public or the actor is licensed or privileged to enter; or
>
> (2) Surreptitiously remains in a structure or a separately secured or occupied portion thereof knowing that he is not licensed or privileged to do so.

includes "remaining in" as an alternative to entry because "the criminal intent may be formed at any time while the defendant remains on the premises and need not have been formed at the time of entry."[80]  This outcome would apparently be permissible under statutes in twenty-two of the twenty-nine jurisdictions listed by Professor Anderson, since, according to Professor Anderson's analysis, only seven states having "remaining in" statutes have required that the remaining be "surreptitious" or "concealed."[81]  But in any event, the seven state statutes including the "surreptitious" or "concealed" exceptions do not necessarily require the defendant to form the intent to commit a crime prior to entry.

A conclusion that the generic offense of burglary requires that intent to commit a crime exist at the time of entry appears to be out of step with the twenty-nine "remaining in" statutes listed by Professor Anderson, and the twenty-four "remaining in" statutes listed by Professor LaFave at the time of the decision in *Taylor*, as well as the five other statutes more recently identified in LaFave's treatise.  If, as the Supreme Court concluded in *Taylor*, "burglary" is "the generic sense in which the term is now [in 1990] used in the criminal codes of most States,"[82] then generic burglary does not require intent to commit a crime at the time of entry if the statute of conviction is a

---

[80] Helen A. Anderson, *From the Thief in the Night to the Guest Who Stayed Too Long: The Evolution of Burglary in the Shadow of the Common Law*, 45 IND. L. REV. 629, 646 & n.122 (2012) (citing *People v. Leonard*, 921 N.Y.S.2d 337, 340 (App. Div. 2011) (holding, in a case in which the  father of a child was admitted by the mother of the child for a visit, that "[a]s for defendant's conviction for burglary in the second degree, the People were required to present evidence establishing that, after defendant was admitted into the mother's home, he remained there unlawfully with the intent to commit a crime and used or threatened to use a dangerous instrument (*see* Penal Law § 140.25[1][c] )") and *State v. Morton*, 768 N.E.2d 730, 734, 737-38 (Ohio Ct. App. 2002) (affirming conviction of defendant who was admitted to apartment by occupant but when asked to leave, engaged in a physical altercation and a struggle over a firearm during which the apartment owner's eyes were gouged out of their sockets and his ear was bitten off by the defendant)).

[81] *Id*. 645-46, 645 n.113, 646 nn.114 & 116.

[82] *Taylor v. United States*, 495 U.S. 575, 598 (1990).

"remaining in" statute. Intent to commit a crime formed while "remaining in" suffices.

JUDGE HIGGINBOTHAM's concurring opinion asserts that "the act of 'remaining in' occurs at a discrete point in time, and to constitute burglary, the perpetrator must have intended to commit a further crime at that discrete point."[83]  To hold otherwise, that opinion posits, "strains common sense,"[84] would "confound[] the purpose of evenhanded sentencing sought after by the Sentencing Guidelines and related statutes," and "fouls the mandate of *Taylor* itself."[85]  As to the mandate of *Taylor*, the concurring opinion's elements of "remaining in" burglary are not elements that were found "in the criminal codes of most States"[86] in 1990, and therefore, those elements are not the elements of generic burglary.  With regard to evenhanded sentencing and common sense, under the concurring opinion's rationale, a person who enters lawfully, but secrets himself with the intent of committing theft during the night would receive a sentencing enhancement, but such an enhancement would not apply to a person who unlawfully breaks into and enters a dwelling he thinks is unoccupied to "party," sees that an occupant is asleep in her bedroom, and sexually assaults her.

It is not the prerogative of federal courts to make value judgments as to what elements a generic offense *should* have.  It is the obligation of federal courts to ascertain from all of the States' statutes the elements that are expressed in most of those States' statutes as part of the process of distilling the elements of a generic offense.[87]  The Supreme Court stated in *Taylor* that it had undertaken such an analysis with respect to burglary, concluding that

---

[83] *See ante* at p. __.
[84] *See ante* at p. __.
[85] *See ante* at p. __.
[86] *See Taylor*, 495 U.S. at 598.
[87] *See Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 190 (2007).

No. 15-20308

it defined that offense in "the generic sense in which the term is now used in the criminal codes of most States."[88] It cannot be said that most of the States' criminal codes defined "remaining in" burglary as JUDGE HIGGINBOTHAM's concurring opinion insists it must be defined. Accordingly, that opinion's formulation is not generic "remaining in" burglary.

**IV**

The commentators' conclusions that a majority of the States had adopted unlawful "remaining in" statutes and that States having only unlawful entry offenses were in the minority remain accurate with respect to current-day burglary offenses. An analysis of the States' current statutes, and state court decisions construing them, reflects that the number of States that have offenses generally falling within a broad (though not necessarily generic) category of "burglary" and that define such an offense only with reference to "entry" onto a premises is slightly in the minority. Other States' criminal statutes have both unlawful entry and unlawful "remaining in" in the definition of burglary, and some States consider "remaining in" to be a separate offense.

An examination of the States' burglary offenses that define that crime solely with reference to unlawful "entry" reflects that a majority of these statutes require intent to commit a crime other than trespass on the premises at the time of unlawful entry. These statutes include:

IND. CODE ANN. § 35-43-2-1 (West 2012 & Supp. 2016)[89]

---

[88] *Taylor*, 495 U.S. at 598.

[89] *See Richards v. State*, 681 N.E.2d 208, 212 (Ind. 1997) (explaining that "the State had to prove that when [the defendant] entered the building he had the intent to commit rape").

No. 15-20308

LA. STAT. ANN. § 14:62 (2016)[90]
MD. CODE ANN., CRIM. LAW § 6-202 (LexisNexis 2012 & Supp. 2016)[91]
MASS. GEN. LAWS ch. 266, § 14 (2008)[92]
MICH. COMP. LAWS § 750.110; § 750.110a (2004 & Supp. 2016)[93]
MINN. STAT. ANN. § 609.582 (West 2009)[94]
MISS. CODE. ANN. § 97-17-23 (2014)[95]
NEB. REV. ST. § 28-507 (2008)[96]
NEV. REV. STAT. § 205.060; § 205.065 (2015)[97]

---

[90] *See State v. Jones*, 426 So. 2d 1323, 1325 (La. 1983) ("The defendant must have had the specific intent to commit either a felony or a theft at the time of his unauthorized entry, both for the crimes of simple burglary and attempted simple burglary.").

[91] *See Walls v. State*, 142 A.3d 631, 652 (Md. Ct. Spec. App. 2016) ("Maryland's statutory offense of burglary in the first degree is 'akin to common law burglary, without the element of in the nighttime.' It requires proof that a defendant (1) broke into the dwelling of another; and (2) did so with the intent to commit theft or a crime of violence.") (citations omitted).

[92] *See Commonwealth v. Negron*, 967 N.E.2d 99, 105 (Mass. 2012) ("The elements of aggravated burglary are: (1) the defendant broke into and entered the dwelling of another; (2) the breaking and entering occurred at night; (3) at the time of the breaking and entering the defendant intended to commit a felony . . . .").

[93] *See People v. Cornell*, 646 N.W.2d 127, 141 (Mich. 2002) ("The elements of breaking and entering with intent to commit larceny are: (1) the defendant broke into a building, (2) the defendant entered the building, and (3) at the time of the breaking and entering, the defendant intended to commit a larceny therein.").

[94] The statute provides: "*Whoever enters a building without consent and with intent to commit a crime*, or enters a building without consent and commits a crime while in the building, either directly or as an accomplice, commits burglary in the first degree." (emphasis added). *See also State v. Davis*, 864 N.W.2d 171, 177 (Minn. 2015) (agreeing that when the defendant did not commit the underlying crime, a jury instruction was erroneous when it "permitted the jury to find him guilty of felony murder if the jury determined that he formed an intent to commit the theft *after* entering the building, even if he did not actually commit a theft").

[95] *See Cortez v. State*, 876 So. 2d 1026, 1030 (Miss. Ct. App. 2003) ("The State seldom has direct and positive testimony expressly showing the specific intent of an intruder at the time he unlawfully breaks into a dwelling house; however, such testimony is not essential to establish the intent to commit a crime.").

[96] The statute provides: "A person commits burglary if such person willfully, maliciously, and forcibly breaks and enters any real estate or any improvements erected thereon with intent to commit any felony or with intent to steal property of any value." *See also State v. Carter*, 288 N.W.2d 35, 36 (Neb. 1980) ("The crime of burglary is complete when there is a breaking and entering with a requisite intent, in this instance, to steal.").

[97] Though section 205.060 does not require an unlawful entry, section 205.065 provides for an inference of felonious intent at the time of entry if the entry is unlawful. *See Sheriff, Clark Cty. v. Stevens*, 630 P.2d 256, 257 (Nev. 1981) ("The offense of burglary is

No. 15-20308

N.J. STAT. ANN. § 2C:18-2(1) (West 2015)[98]
N.M. STAT. ANN. § 30-16-3 (2004)[99]
N.C. GEN. STAT. § 14-51 (2015)[100]
OKLA. STAT. tit. 21, § 1431 (2015)[101]
18 PA. STAT. AND CONS. STAT. ANN. § 3502 (West 2015)[102]
11 R.I. GEN. LAWS § 11-8-1 (2002)[103]
S.C. CODE ANN. § 16-11-312 (2015)[104]
TENN. CODE ANN. § 39-14-402(a)(1) (2014)

---

complete when the house or other building is entered with the specific intent to commit larceny or any felony therein.").

[98] *See* N.J. STAT. ANN. § 2C:18-2 (West 2015):

> A person is guilty of burglary if, with purpose to commit an offense therein or thereon he:
>
> (1) Enters a research facility, structure, or a separately secured or occupied portion thereof unless the structure was at the time open to the public or the actor is licensed or privileged to enter; . . . .

*See also State v. Jijon*, 624 A.2d 1029, 1030 (N.J. 1993) ("It is now well established that burglary is complete upon entry with purpose of committing an offense."), *aff'd*, 640 A.2d 1152 (N.J. 1994).

[99] *See State v. Jennings*, 691 P.2d 882, 885 (N.M. Ct. App. 1984) ("Burglary is a specific intent crime. It requires an unauthorized entry with the intent to commit any felony or theft therein. . . . An unauthorized presence in a structure is evidence from which a jury could reasonably infer the necessary intent to commit a felony or theft therein.") (citations omitted).

[100] *See State v. Montgomery*, 461 S.E.2d 732, 739 (N.C. 1995) ("If at the time of a breaking and entering a person does not possess the intent to commit a felony therein, he may only properly be convicted of misdemeanor breaking or entering, a lesser included offense of first-degree burglary.").

[101] *See Rowland v. State*, 817 P.2d 263, 265-66 (Okla. Crim. App. 1991) ("To warrant conviction for Burglary in the First Degree . . . it is necessary for the [defendant] to have the intent to commit a crime at the time of his unlawful entry of the dwelling.").

[102] *See Commonwealth v. Russell*, 460 A.2d 316, 321 (Pa. Super. Ct. 1983) ("In order to be convicted of burglary, the defendant must have formed the intent to commit a crime when he entered the victim's residence, not after he entered. . . . The entry must be contemporaneous with the intent to commit a crime therein.") (citation omitted). A recently enacted revision of the statute does not alter the intent requirement. *See* 2016 Pa. Legis. Serv. Act 2016-158 (S.B. 1062).

[103] *See State v. Contreras-Cruz*, 765 A.2d 849, 852 (R.I. 2001) (holding that this provision "incorporates the common law definition of the crime," which "is the breaking and entering the dwelling-house of another in the nighttime with the intent to commit a felony therein, whether the felony be actually committed or not.") (quoting *State v. Hudson*, 165 A. 649, 650 (1933)).

[104] *See Pinckney v. State*, 629 S.E.2d 367, 369 (S.C. 2006) ("Further, there is no requirement that the intent element is satisfied only by proving an intent to commit the specific crime that is charged in the indictment as an aggravating circumstance. The only requirement is that there be intent to commit any crime at the time of entry.").

No. 15-20308

TEX. PENAL CODE ANN. § 30.02(a)(1) (West 2011)[105]
WIS. STAT. ANN. § 943.10 (West 2005)[106]

Some of the foregoing offenses may not constitute "generic" burglary because they are overly inclusive as to the type of premises on which a generic burglary may occur. For example, the Louisiana offense cited above includes theft from a vehicle,[107] and the Nebraska offense includes "any real estate or any improvements erected thereon."[108] But ascertaining what generic burglary requires regarding intent to commit a crime on the premises would entail an examination of all state statutes, even those that might be over-inclusive in the final analysis, to arrive upon the "generic" definition of an offense.

A few state statutes define a burglary offense as involving only "entry" with intent to commit a crime at the time of entry or the commission of a crime after entry, but they do not require *unlawful or unprivileged* entry. They therefore do not appear to include generic burglary. Such statutes include:

CAL. PENAL CODE § 459 (West 2010)[109]
IDAHO CODE § 18-1401 (2016)[110]

---

[105] *See Devaughn v. State*, 749 S.W.2d 62, 65 (Tex. Crim. App. 1988) (en banc) ("It is well settled that the intent to commit a felony or theft must exist at the moment of the entry or there is no offense under § 30.02(a)(1).").

[106] *See Levesque v. State*, 217 N.W.2d 317, 319 (Wis. 1974) ("To constitute the crime of burglary under sec. 943.10(1)(a), one must enter the building without the consent of the person in possession. Concurrently with the entry he must have the intention to steal or commit a felony.").

[107] *See* LA. STAT. ANN. § 14:62 (2016).

[108] *See* NEB. REV. ST. § 28-507 (2008).

[109] *See Taylor v. United States*, 495 U.S. 575, 591 (1990) (noting that "California defines 'burglary' so broadly as to include shoplifting and theft of goods from a 'locked' but unoccupied automobile").

[110] The statute provides: "Every person who enters any [enumerated structure] with intent to commit any theft or any felony, is guilty of burglary." *See also State v. Rawlings*, 363 P.3d 339, 342 (Idaho 2015) (burglary requires only "entry with the intent to steal anything he finds that he might desire to appropriate").

No. 15-20308

NEV. REV. STAT. § 205.060 (2015)[111]
11 R.I. GEN. LAWS § 11-8-3 (2002)[112]
W. VA. CODE ANN. § 61-3-11 (LexisNexis 2014)[113]

A few other state burglary offenses are defined as involving "entry" without consent, but they do not require intent to commit another crime *at the time of entry*. Intent to commit a crime may be formed after unlawful entry, and therefore they do not constitute generic burglary. These statutes appear to include:

MINN. STAT. ANN. § 609.582 (West 2009)[114]
TENN. CODE ANN. § 39-14-402(a)(3) (2014)[115]
TEX. PENAL CODE ANN. § 30.02(a)(3) (West 2011)[116]

Some state "unlawful entry or 'remaining in'" statutes appear to have been construed to set forth two divisible offenses and, when only unlawful entry is charged, to require intent at the time of unlawful entry. If we treat

---

[111] *See Sheriff, Clark Cty. v. Stevens*, 630 P.2d 256, 257 (Nev. 1981) ("The offense of burglary is complete when the house or other building is entered with the specific intent to commit larceny or any felony therein.").

[112] The statute provides: "Every person who, with intent to commit [an enumerated felony], shall enter any dwelling house or apartment at any time of the day or night, or who with such intent shall, during the daytime, enter any other building, or ship or vessel, shall be [punished by fine and/or imprisonment]."

[113] The statute provides: "If any person shall, in the nighttime, break and enter*, or enter without breaking,* or shall, in the daytime, break and enter, the dwelling house, or an outhouse adjoining thereto or occupied therewith, of another, with intent to commit a crime therein, he shall be deemed guilty of burglary." (emphasis added).

[114] The statute provides: "Whoever enters a building without consent and with intent to commit a crime, *or enters a building without consent and commits a crime while in the building*, either directly or as an accomplice, commits burglary in the first degree." (emphasis added).

[115] The statute provides: "A person commits burglary who, without the effective consent of the property owner: . . . Enters a building and commits or attempts to commit a felony, theft or assault."

[116] The statute provides: "A person commits an offense if, without the effective consent of the owner, the person: . . . enters a building or habitation and commits or attempts to commit a felony, theft, or an assault." *See also Rivera v. State*, 808 S.W.2d 80, 92 (Tex. Crim. App. 1991) (en banc) ("The State need neither plead nor prove a burglar's intent to commit a felony or theft upon entry under (a)(3) . . . .").

46

No. 15-20308

these statutes as setting forth separate offenses, then they should logically be included in the analysis of "entry" offenses. These statues appear to include:

CONN. GEN. STAT. ANN. § 53a-101 (West 2012)[117]
720 ILL. COMP. STAT. 5/19-1 (West 2003)[118]
N.Y. PENAL LAW § 140.20 (McKinney 2010)[119]

But the focus of the present case is what "generic" burglary requires regarding intent when the statute of conviction was an unlawful entry *or remaining in* statute. An examination of the State offenses, at least in their current iterations, reflects that many of them do not appear to set forth two divisible offenses,[120] i.e. unlawful entry and unlawful remaining in, and there is no "majority" view as to timing of intent, though a majority of "remaining

---

[117] *See State v. Edwards*, 524 A.2d 648, 652-53 (Conn. App. 1987) (holding that failure to instruct the jury that it needed to agree on whether defendant entered unlawfully or unlawfully remained would have been error if the state had presented evidence of unlawful remaining *and* unlawful entry (i.e. that entry had been lawful) because the two types of burglary recognized are conceptually different actions); *State v. Belton*, 461 A.2d 973, 976 (Conn. 1983) (explaining that "to remain unlawfully contemplates an initial legal entry which becomes unlawful at the time that the actor's right, privilege or license to remain is extinguished").

[118] *See People v. Boose*, 487 N.E.2d 1088, 1090 (Ill. App. 1985) (overturning a conviction when the defendant, who entered a store during business hours, fell asleep, awoke after hours, and was in possession of store merchandise, was charged only with illegal entry, explaining that "the statute states the offense in the alternative: a defendant commits burglary of a building either by illegal entry or by illegally remaining" and when the state charges only burglary by illegal entry, "the State has the burden of showing that Boose entered [the building] both without authority and with the intent to steal"); *People v. Boone*, 577 N.E.2d 788, 789 (Ill. App. 1991) ("To sustain a conviction for burglary, the State is required to prove either (1) the defendant entered the building without authority and with the intent to commit a felony or theft, or (2) he remained within the building without authority and with the intent to commit a felony or theft.").

[119] *See People v. Gaines*, 546 N.E.2d 913, 914 (N.Y. 1989) (addressing whether, in a case of unlawful entry, "the jury should have been instructed that they must find defendant's intent to commit a crime in the building existed *at the time* of the entry," or whether such an instruction was unnecessary "because the 'remains unlawfully' element of the statute means that such an intent may be formed *after* defendant's unlawful entry" and concluding that the New York statute "requires that intent to commit a crime in the building exist at the time of the unlawful entry").

[120] *See Mathis v. United States*, 136 S. Ct. 2243, 2249-2250 (2016) (explaining the difference between "divisible" statutes and "alternative means" statutes).

in" offenses do not appear to require the intent to commit a crime on the premises to have been formed at or before the time the unlawful remaining in occurs. State "unlawful entry or remaining in" statutes that have either been construed to permit intent to be formed during the trespass (including after deciding to remain in unlawfully) or are not considered divisible statutes, such that the jury does not have to be unanimous as to when intent was formed include:

> ALA. CODE § 13A-7-5 (2008 & Supp. 2012)[121]
> COLO. REV. STAT. ANN. § 18-4-202 (West 2013)[122]
> FLA. STAT. ANN. § 810.02(1)(b)(2) (West 2007 & Supp. 2016)[123]

---

[121] *See Gratton v. State*, 456 So. 2d 865, 872 (Ala. Crim. App. 1984) (observing that a jury instruction that intent must be formed at the time of entry was properly refused as an incomplete statement of current Alabama law, explaining that while "[p]rior to the adoption of Alabama's new Criminal Code, the statutory crime of burglary in the first degree (§ 13–2–40) required that the intent to steal or to commit a felony be concurrent with the breaking and entering," under the current code, "the intent to commit a crime may be concurrent with the unlawful entry or it may be formed after the entry and while the accused remains unlawfully").

[122] The statute provides: "A person commits first degree burglary if the person knowingly enters unlawfully, *or remains unlawfully after a lawful or unlawful entry*, in a building or occupied structure with intent to commit therein a crime . . . ." *See also People v. Bondurant*, 296 P.3d 200, 214 (Colo. App. 2012) (holding that, under current law "to commit first degree burglary a person had to "knowingly enter[ ] unlawfully, or remain[ ] unlawfully *after a lawful or unlawful entry,* in a building or occupied structure with intent to commit therein a crime" and overruling a prior case that had "require[d] proof that the defendant intended to commit a crime inside at the moment he first became a trespasser") (citing *Cooper v. People*, 973 P.2d 1234, 1241 (Colo. 1999)); *id.* ("We agree with other divisions of this court that the 1999 amendments legislatively overruled *Cooper* with respect to the intent element of burglary.") (citing *People v. Oram,* 217 P.3d 883, 892 (Colo. App. 2009) ("Intent to commit a crime against another person or property while in the dwelling can be formed either before or after the unlawful entry"), *aff'd on other grounds,* 255 P.3d 1032 (Colo. 2011); *People v. Larkins,* 109 P.3d 1003, 1004 (Colo. App. 2004); *People v. Wartena,* 296 P.3d 136, 140 (Colo. App. 2012)).

[123] *State v. Herron*, 70 So. 3d 705, 707 (Fla. Dist. Ct. App. 2011) (affirming burglary conviction even though defendant had not entered unlawfully but was asked to leave and refused, and only subsequently formed intent to commit assault, reasoning that "[a]lthough at first [the defendant] only remained in the apartment with a mere suspicion that [the occupant]'s boyfriend was in the apartment, once [the defendant] opened the closet door his suspicion was met and he remained in the apartment and fought").

No. 15-20308

GA. CODE ANN. § 16-7-1 (2011 & Supp. 2016)[124]
720 ILL. COMP. STAT. 5/19-1 (West 2003)[125]
IOWA CODE ANN. § 713.1 (West 2016)[126]
KAN. STAT. ANN. § 21-5807 (2007 & Supp. 2015)[127]
KY. REV. STAT. ANN. § 511.020 (LexisNexis 2014)[128]

---

[124] *See Williams v. State*, 601 S.E.2d 833, 836 (Ga. App. 2004) (upholding a conviction in a case in which the defendant both entered and remained in without consent, reasoning that "[b]ecause the evidence supported the jury's conclusion that [the defendant] assaulted Markell with a knife in Allen's house, it was authorized to determine that at some point before he entered the house or while he remained in it, he intended to commit the aggravated assault") (internal quotation omitted) (footnote omitted); *see also id.* at 836 ("The intent necessary for commission of burglary . . . need not be formed at the precise moment of entry, but can be formed thereafter while the perpetrator is remaining on the premises.") (internal quotation omitted) (footnote omitted).

[125] *See People v. Boose*, 487 N.E.2d 1088, 1090 (Ill. App. 1985) (suggesting in a case in which the defendant was charged only with illegal entry, that conviction could have been upheld had he been charged under the "remaining in" prong of the statute, even if there was no evidence that his intent to steal merchandise from a store was formed before he awoke in a closet after the store had closed, observing that while "[a] criminal intent formulated after a lawful entry will satisfy the offenses of larceny (retail theft) or burglary by illegally remaining, [it] will not . . . satisfy the offense of burglary by illegal entry").

[126] *See State v. Dible*, 538 N.W.2d 267, 270-71 (Iowa 1995) (rejecting the defendant's argument that the decision to remain over and the formation of an intent to assault had to occur contemporaneously, explaining that that the defendant's "decision to remain may have begun when he refused to comply with [the occupants'] request that he leave, but it remained intact from the time he returned to the kitchen up until the time he left [the occupants'] home" and that "[b]ecause he also formed an intent to assault when he returned to the kitchen, [he] satisfied the statute's contemporaneous intent requirement: he was remaining over and doing so with the intent to commit an assault" and citing with approval JOHN L. YEAGER & RONALD L. CARLSON, 4 IOWA PRACTICE, CRIMINAL LAW & PROCEDURE § 294 (1979) ("[W]ill the [S]tate have to prove that [the defendant] formed the necessary intent at the time his presence in the place became unlawful, or will it be sufficient to prove that at some time while he was unlawfully present he formed the intent . . . to commit an assault?  The [statutory] language suggests the latter.")).

[127] *See State v. Gutierrez*, 172 P.3d 18, 22 (Kan. 2007) ("Remaining within refers to a defendant's presence in the building's interior after any entering into, authorized or unauthorized, has been accomplished."); *id.* at 23 ("[T]he intent to commit a felony and the unauthorized entering into or remaining within *must at some point in time coexist*.") (emphasis added);  *State v. Frierson*, 319 P.3d 515, 522 (Kan. 2014) (holding that unanimity of the jury as to the means, entering or remaining within, by which the crime is committed is not required, but the state must present sufficient evidence to permit a jury to find each means beyond a reasonable doubt).

[128] *See McCarthy v. Commonwealth*, 867 S.W.2d 469, 471 (Ky. 1993) (holding, in a case in which the defendant unlawfully entered by kicking down the door after being denied entry but argued he entered the house only to "confer with his wife," and did not intend an assault upon entry, that the defendant "may be convicted of the crime of burglary providing the jury

49

No. 15-20308

ME. REV. STAT. ANN. tit. 17-A, § 401 (2006 & Supp. 2015)[129]
MO. REV. STAT. § 569.160 (2016)[130]
OHIO REV. CODE ANN. §§ 2911.12, 2911.21(A)(1) (West 2006 & Supp. 2016)[131]
UTAH CODE ANN. § 76-6-202 (LexisNexis 2012)[132]

---

finds that he knowingly entered the building with intent to commit a crime or that he remained unlawfully in the building with intent to commit a crime" and that "even if one believes that appellant did not have the requisite intent as he entered the house, one could surely believe he subsequently formed the intent necessary to be guilty of the crime of burglary").

[129] *See State v. Harding*, 392 A.2d 538, 541 n.2 (Me. 1978) (concluding, in a case involving only unlawful entry, that there was no obvious error in an instruction to the jury that "[i]f a person surreptitiously remains, once having gained entrance, . . . knowing he is not licensed to be there, and formulates the intent after surreptitiously remaining in there, . . . he can have the intent at that time").

[130] *See State v. Rollins*, 882 S.W.2d 314, 317-18 (Mo. Ct. App. 1994) (upholding conviction of defendant charged only with unlawfully remaining in, despite concluding that he also entered unlawfully by obtaining entrance through artifice, reasoning that "[s]ince defendant was not licensed to enter the apartment [because he gained admission by artifice], he was likewise not licensed to remain there"). Missouri has redrafted the statute effective January 2017, but the changes are primarily cosmetic (changing "crime" to "offense" and "he" to "he or she." The substance of the statute remains the same. MO. REV. STAT. § 569.160 (2016 & Supp. 2016).

[131] *See State v. Fontes*, 721 N.E.2d 1037, 1040 (Ohio 2000) (holding that "a defendant may form the purpose to commit a criminal offense at any point during the course of a trespass").

[132] *See State v. Rudolph*, 970 P.2d 1221, 1228-29 (Utah 1998). The court rejected the argument that the "remaining unlawfully" provision was only intended to reach "those cases where the actor initially enters a building lawfully but then remains there after his or her right to do so has expired for purposes of committing a crime," stating that

> While this may be true, it does not necessarily follow that the "remaining unlawfully" provision is confined to those situations where the initial entry was lawful. We believe that such an interpretation would create an anomalous result. For instance, under Rudolph's interpretation of the statute, one who enters lawfully but then remains unlawfully and forms the intent to commit another felony, theft, or assault is guilty of burglary while one who enters unlawfully and thereafter forms that same intent is guilty only of trespass. We are unable to see the distinction between the two scenarios. In our view, the actor in the second scenario is at least as dangerous and culpable as the actor in the first. Therefore, we are not satisfied that our legislature intended such a result when it enacted our current burglary statute. . . . [W]e hold that a person is guilty of burglary . . . if he forms the intent to commit a felony, theft, or assault at the time he unlawfully enters a building or at any time thereafter while he continues to remain there unlawfully.

WASH. REV. CODE § 9A.52.020 (2015)[133]

Another unlawful entry or remaining in statute permits a conviction for burglary when the entry was unlawful but intent to commit a crime on the premises was formed after the unlawful entry:  S.D. CODIFIED LAWS § 22-32-1 (2006).[134]

Accordingly, at least fourteen States currently have "remaining in" offenses that do not have as an element the timing requirement advocated by JUDGE HIGGINBOTHAM's concurring opinion.  The state offenses that do have such an element are few in number.

At least one state statute provides that intent to commit a crime on the premises must be present at the time of unlawful entry or at the time of lawful entry if the person, with intent to commit a crime, remains on the premises after the privilege to enter expires or the premises are no longer open to the public:  VT. STAT. ANN. tit. 13, § 1201 (2009 & Supp. 2016).  State "remaining in" statutes that appear to require intent to commit a crime at the time that the defendant's presence on the property first becomes unlawful include:

> ALASKA STAT. § 11.46.310 (2014)[135]
> ARK. CODE ANN. § 5-39-201 (2013)[136]

---

[133] *See State v. Allen*, 110 P.3d 849, 854 (Wash. Ct. App. 2005) (expressing agreement with the Supreme Court of Utah's analysis in *Rudolph*, 970 P.2d at 1229).

[134] *See State v. DeNoyer*, 541 N.W.2d 725, 732 (S.D. 1995) (holding, where evidence indicated that defendant entered without permission and raped an occupant and where there was no evidence of permission to enter, defendant was not entitled to an instruction "that in order to be found guilty of burglary, he must have had the intent to rape the victim when he entered her home" because "the current burglary statute simply requires that the person remain in the structure after forming the intent to commit a crime").

[135] *See Pushruk v. State*, 780 P.2d 1044, 1048 (Alaska Ct. App. 1989) (stating in dicta when only unlawful entry was at issue that "to find a defendant guilty of burglary, the state must show the defendant had the intent to commit an additional crime at the time his presence on the premises first became unlawful, *i.e.*, at the time that he first trespassed, entered or remained unlawfully on the premises").

[136] *See Holt v. State*, 384 S.W.3d 498, 505 (Ark. 2011) (observing that even if the defendant had been invited into the dwelling, "he certainly was not privileged to remain there

No. 15-20308

CONN. GEN. STAT. ANN. § 53a-101 (West 2012)[137]
HAW. REV. STAT. ANN. § 708-810 (LexisNexis 2016)[138]
N.Y. PENAL LAW § 140.20 (McKinney 2010)[139]
OR. REV. STAT. § 164.215 (2015)[140]

---

once he began telling [the victim] 'I told you I could get in anytime I wanted to' and 'if I can't have you, no one can' and stabbing her").

[137] *See State v. Edwards*, 524 A.2d 648, 652-53 (Conn. App. Ct. 1987) (holding that failure to instruct the jury that it needed to agree on whether defendant entered unlawfully or unlawfully remained would have been error if the state had presented evidence of unlawful remaining *and* unlawful entry because the two types of burglary recognized are conceptually different actions); *State v. Belton*, 461 A.2d 973, 976 (Conn. 1983) (explaining that "to remain unlawfully contemplates an initial legal entry which becomes unlawful at the time that the actor's right, privilege or license to remain is extinguished"); *see also State v. Brooks*, 868 A.2d 778, 782 n.2 (Conn. App. Ct. 2005) (reasoning that even if entry had been "with implicit consent, . . . 'vicious assault' . . . was clearly not within the scope of that consent," and therefore the defendant had remained unlawfully).

[138] *State v. Mahoe*, 972 P.2d 287, 293 (Haw. 1998) ("A perpetrator 'remains unlawfully' for the purposes of a burglary prosecution only in situations in which the individual makes an initial lawful entry, that subsequently becomes unlawful."); *id.* at 291 ("It would be an unwarranted extension of Hawai'i's modern burglary statute to expand the offense of burglary to include situations in which the criminal intent develops after an unlawful entry or remaining has occurred."); *id.* at 289-90 (appearing to require jury unanimity as to the conduct (entering or remaining) that underlies the burglary conviction).

[139] *See People v. Gaines*, 546 N.E.2d 913, 915-16 (N.Y. 1989) (concluding that in order to be guilty of burglary for unlawful remaining, a defendant must have entered legally, but remain for the purpose of committing a crime after authorization to be on the premises terminates, explaining: "[b]y the words 'remains unlawfully' the Legislature sought to broaden the definition of criminal trespass, not to eliminate the requirement that the act constituting criminal trespass be accompanied by contemporaneous intent to commit a crime. . . . In either [unlawful entry or unlawful remaining], contemporaneous intent is required.").

[140] *See State v. White*, 147 P.3d 313, 321 (Or. 2006) ("[T]he legislature included the 'remains unlawfully' wording in the burglary statute solely to clarify that burglary could occur by remaining unlawfully after an initial lawful entry. It did not intend to provide that a defendant who commits burglary by entering a building unlawfully commits an additional, separate violation of the burglary statute by remaining in the dwelling thereafter."); *In re JNS*, 308 P.3d 1112, 1117 (Or. Ct. App. 2013) ("[W]e hold that second-degree burglary may be committed in two alternative ways: (1) entering a building unlawfully with the intent to commit a crime therein; or (2) entering a building lawfully, but then remaining unlawfully— viz., failing to leave after authorization to be present expires or is revoked—with the intent to commit a crime therein."); *id.* at 1118 ("If the trespass begins when a defendant remains in a building after authorization has expired or has been revoked, then we ask whether the defendant possessed the requisite criminal intent at the time of the unlawful remaining.").

## No. 15-20308

Of these seven state offenses, only five come within the parameters advocated by JUDGE HIGGINBOTHAM's concurring opinion as "generic" "remaining in" burglary. That is because the Arkansas and Connecticut offenses have been construed to encompass those who lawfully enter and whose presence becomes unlawful only because of the commission of a crime on the premises.[141] The commission of the crime is considered to have implicitly revoked, or exceeded the limits of, the permission to enter.[142] Such an offense is no different from an analytical perspective than the example in JUDGE HIGGINBOTHAM's concurring opinion of "teenagers who remain in a house beyond their invitation intending only to party, then later decide to steal."[143] The Arkansas and Connecticut offenses also do not fit within the requirement espoused by JUDGE HIGGINBOTHAM's concurring opinion that "the perpetrator trespass while already harboring intent to commit a further crime."[144] Similarly, though the violent crimes considered to have revoked permission to be on the premises in the Arkansas and Connecticut decisions construing "remaining in" are different in degree from shoplifting, the legal principles are the same: commission of a crime after lawful entry. It appears that only five state statutes actually embody what JUDGE HIGGINBOTHAM's concurring opinion describes as the "narrower approach to generic burglary's 'remaining in' language"[145] with respect to the timing of intent to commit a crime on the

---

[141] *See Holt v. State*, 384 S.W.3d 498, 505 (Ark. 2011) (observing that even if the defendant had been invited into the dwelling, "he certainly was not privileged to remain there once he began telling [the victim] 'I told you I could get in anytime I wanted to' and 'if I can't have you, no one can' and stabbing her"); *State v. Brooks*, 868 A.2d 778, 782 n.2 (Conn. App. 2005) (reasoning that even if entry had been with implicit consent, "vicious assault . . . was clearly not within the scope of that consent" and "[t]hus, the defendant unlawfully remained within the meaning of the statute").

[142] *See id.*

[143] *See ante* at p. __.

[144] *See ante* at p. __.

[145] *See ante* at p.__.

premises. There is no indication that the number of states that had adopted statutes embodying the "narrower approach" was any greater when *Taylor* was decided.

"Remaining in" statutes that appear to be broader than generic burglary because a shoplifter can be convicted include:

ARIZ. REV. STAT. ANN. § 13-1507 (2010)[146]
VA. CODE ANN. § 18.2-90 (2014)[147]

It is unclear what certain other "remaining in" statutes require regarding the timing of intent because the state courts have not yet addressed the question:

DEL. CODE ANN. tit. 11, § 824 (2015)
MONT. CODE ANN. § 45-6-204 (2014)[148]
N.H. REV. STAT. ANN. § 635:1 (2016)
N.D. CENT. CODE § 12.1-22-02 (2012)
TENN. CODE ANN. § 39-14-402(a)(2) (2014)
TEX. PENAL CODE ANN. § 30.02(a)(2) (West 2011)
WYO. STAT. ANN. § 6-3-301 (2015)

Analysis of the current state "remaining in" burglary statutes reflects that very few of them require that intent to commit a crime on the premises

---

[146] *See State v. Belcher*, 776 P.2d 811, 812 (Ariz. Ct. App. 1989) (upholding a burglary conviction when jeans were stolen from a store during business hours, reasoning "[t]he requisite intent to commit burglary may be formed after a person enters a store in all innocence").

[147] *See Clark v. Commonwealth*, 472 S.E.2d 663, 663 (Va. 1996), *on reh'g*, 481 S.E.2d 495 (Va. 1997) (affirming burglary conviction when defendant entered store at night while it was open for business and committed theft while what appeared to be the butt of a gun was showing from his pocket; the court reasoned "[w]e hold that under Code § 18.2-90, a person who enters a store intending to commit robbery therein, enters the store unlawfully."); *id.* at 677 ("We reiterate our holding in *Johns* that '[i]t would be an impeachment of the common sense of mankind to say that . . . a thief who enters the store with intent to steal does so with the owner's consent and upon his invitation.'") (quoting *Johns v. Commonwealth*, 392 S.E.2d 487, 489 (Va. 1990)).

[148] *See State v. Manthe*, 641 P.2d 454, 456 (Mont. 1982) (holding that evidence was sufficient to support a finding of either unlawful entry or unlawful remaining in, but it is not clear what jury was instructed regarding timing of intent to commit another crime on the premises).

be formed prior to or at the time of the unlawful remaining in the premises. It also cannot be said that a majority of the States have adopted "remaining in" statutes that require a jury to decide unanimously whether the defendant entered unlawfully or remained unlawfully.

## V

The Sixth and Eighth Circuits have held, without discussing the timing of intent, that violations of the same Tennessee statute at issue in *Herrera-Montes*[149] constitute generic burglary.[150] Our decision in *Herrera-Montes* is therefore in direct conflict with other Circuit Court decisions. More broadly, the Circuit Courts are in conflict as to when generic burglary requires intent to commit a crime to be formed.

In *United States v. Bonilla*, the Fourth Circuit held that a conviction under Texas Penal Code section 30.02(a)(3) qualified as "burglary of a dwelling" under § 2L1.2 of the Guidelines.[151] The Texas statute provided that "[a] person commits an offense if, without the effective consent of the owner, the person . . . enters a building or habitation and commits or attempts to commit a felony, theft, or an assault."[152] The Fourth Circuit agreed with the defendant that this offense "does not require that the intent exist at entry."[153] But the court did not agree that "this quirk as to the timing element is fatal under *Taylor*,"[154] concluding that intent at entry is not an element of generic

---

[149] *United States v. Herrera-Montes*, 490 F.3d 390 (5th Cir. 2007).

[150] *See United States v. Pledge*, 821 F.3d 1035, 1037 (8th Cir. 2016); *United States v. Priddy*, 808 F.3d 676, 684 (6th Cir. 2015); *United States v. Eason*, 643 F.3d 622, 624 (8th Cir. 2011); *United States v. Nance*, 481 F.3d 882, 887-88 (6th Cir. 2007); *United States v. Anderson*, 923 F.2d 450, 454 (6th Cir. 1991).

[151] *United States v. Bonilla*, 687 F.3d 188, 190, 193 (4th Cir. 2012).

[152] *Id.* at 192 (internal quotation marks omitted) (quoting TEX. PENAL CODE ANN. § 30.02 (West 2011)).

[153] *Id.* at 192-93.

[154] *Id.* at 193.

burglary, even if the statute of conviction is an unlawful "entry" statute and does not include "remaining in."[155]

In *Bonilla*, The Fourth Circuit also considered the defendant's argument that "a homeless person who unlawfully enters a home only to seek warmth, but while inside, forms an intent to steal" would present less of a risk than a person who enters after plotting to commit a crime.[156]   That argument is similar to the trespassing-teenagers hypothetical discussed in *Herrera-Montes*.[157]   But the Fourth Circuit concluded such arguments are "flawed" and convictions for such offenses qualify as generic burglary because "Taylor does not distinguish between burglaries based on their comparative level of risk, but rather is concerned with a defendant's (1) unlawful presence, (2) in a building or structure, (3) with the intent to commit a crime."[158]   The Fourth Circuit recognized that its holding conflicted with our court's decision in *United States v. Constante*,[159] but concluded that the Fifth Circuit's "reading of *Taylor* [is] too rigid."[160]   The Texas statute at issue in *Bonilla* was virtually identical to the Tennessee statute at issue in *Herrera-Montes*, and accordingly, our decision in the latter case also conflicts with a Fourth Circuit decision.

The Sixth Circuit has held that a conviction under the Tennessee statute[161] at issue in *Herrera-Montes* qualifies as generic burglary, contrary to our holding.[162]   The Tennessee statute at issue in *Priddy* defined four different

---

[155] *Id.*

[156] *Id.*

[157] *Unites States v. Herrera-Montes*, 490 F.3d 390, 392 (5th Cir. 2007).

[158] *Bonilla*, 687 F.3d at 193.

[159] 544 F.3d 584 (5th Cir. 2008) (per curiam).

[160] *Bonilla*, 687 F.3d at 194.

[161] TENN. CODE ANN. § 39-14-402(a)(3).

[162] *See United States v. Priddy*, 808 F.3d 676, 684 (6th Cir. 2015); *see also United States v. Nance*, 481 F.3d 882, 887-88 (6th Cir. 2007) (observing in a case under the ACCA that "the weight of authority indicates that Tennessee's aggravated burglary statute is generic" and holding that because an aggravated burglary under Tennessee law occurs when an individual enters a habitation without effective consent of the property owner and intends to commit a

burglary offenses, including the offense that occurs when, "without[] the effective consent of the property owner," a defendant "[e]nters a building and commits or attempts to commit a felony or theft,"[163] the offense at issue in *Herrera-Montes*.[164]  The Sixth Circuit did not expressly discuss the timing of when the intent to commit a crime must be formed, but it did not identify timing as an element in concluding that the Tennessee statute was congruent with *Taylor*.[165]  It is notable that Tennessee is within the Sixth Circuit's jurisdiction, and as this court observed in *Herrera-Montes*, at least one Tennessee state court has held that the offense at issue in both *Herrera-Montes*, and the Sixth Circuit's decision in *Priddy*, Tennessee Code section 39-14-402(a)(3), does not require intent to commit a crime on the premises to have been formed at the time of entry.[166]

Decisions from the Eighth Circuit appear to conflict with one another,[167] though only one discusses when a defendant charged with burglary must have formed the intent to commit a crime on the premises.[168]  In *United States v. McArthur*, a case arising under the ACCA, the Eighth Circuit held that a Minnesota burglary conviction was not for generic burglary because the offense

felony, it is generic burglary); *United States v. Anderson*, 923 F.2d 450, 454 (6th Cir. 1991) (holding in a case under the ACCA that an enhanced sentence was proper because "Anderson was convicted of violating Tennessee's burglary statute," which, as the court noted, "contains all of the[] elements" outlined in *Taylor*).

[163] *Priddy*, 808 F.3d at 684 (quoting TENN. CODE ANN. § 39-14-402(a)(3) (1990)).

[164] *See Unites States v. Herrera-Montes*, 490 F.3d 390, 391 (5th Cir. 2007).

[165] *See Priddy*, 808 F.3d at 684.

[166] *See Unites States v. Herrera-Montes*, 490 F.3d 390, 392 n.2 (5th Cir. 2007) (observing that "[t]he plain text of § 39-14-402(a)(3) does not require such intent, as a Tennessee court has recognized). *See State v. Wesemann*, 1995 WL 605442, at *2 (Tenn. Crim. App. Oct. 16, 1995) (holding that § 39-14-402(a)(3) "requires only that a felony be committed or attempted once the perpetrator enters the building.  Criminal intent does not have to occur either prior to or simultaneous with the entry. ") (citations omitted).

[167] *Compare United States v. McArthur*, 836 F.3d 931, 943-44 (8th Cir. 2016), *with United States v. Pledge*, 821 F.3d 1035, 1037 (8th Cir. 2016), *and United States v. Eason*, 643 F.3d 622, 624 (8th Cir. 2011).

[168] *See McArthur*, 836 F.3d at 931, 943-44.

did "not require that the defendant have formed the 'intent to commit a crime' at the time of the nonconsensual entry or remaining in."[169]  The Minnesota statute at issue provided that "[w]hoever . . . enters a building without consent and steals or commits a felony or gross misdemeanor while in the building" commits burglary,[170] and another Minnesota statute defined "enters a building without consent" to include either entering or remaining in a building without the owner's consent.[171]  The Government argued that a person convicted under this statute for entering a building without consent and then committing one of the listed offenses "meets the 'remaining in' aspect of *Taylor*'s definition" of burglary "because he must have developed the requisite intent at some point while 'remaining in' the building."[172]  The Eighth Circuit rejected this argument.  It concluded that "'remaining in' . . . is a discrete event that occurs at the moment when a perpetrator, who at one point was lawfully present, exceeds his license and overstays his welcome."[173]  The court held that "[i]f the defendant does not have the requisite intent at the moment he 'remains,' then he has not committed the crime of generic burglary."[174]  Accordingly, the Eighth Circuit concluded that a conviction under the Minnesota statute "does not require that the defendant have formed the 'intent to commit a crime' at the time of the nonconsensual entry or remaining in" and therefore that "it does not qualify as a violent felony" under the ACCA.[175]

The Eighth Circuit's decision in *McArthur* seems to conflict with a decision from that Circuit four months earlier in *United States v. Pledge*, which

---

[169] *Id*. at 944 (citing MINN. STAT. § 609.582, subdiv. 3).
[170] *Id*. at 942 (quoting § 609.582, subdiv. 3).
[171] *Id*. (citing § 609.581, subdiv. 4).
[172] *Id*. at 943.
[173] *Id*. at 944.
[174] *Id*.
[175] *Id*.

also involved the ACCA,[176] and with *United States v. Eason*, which involved Sentencing Guideline § 4B1.1(b).[177]  Neither *Pledge* nor *Eason* discussed when intent to commit a crime on the premises must be formed.  But the court held in *Pledge* that "[a] burglary under TENN. CODE ANN. § 39-14-403 qualifies as a generic burglary offense and is categorically a violent felony."[178]  Aggravated burglary under section 39-14-403 is "burglary of a habitation as defined in §§ 39-14-401 and 39-14-402."[179]  Section 39-14-402 includes the following offense:  "A person commits burglary who, without the effective consent of the property owner . . . [e]nters a building and commits or attempts to commit a felony, theft or assault."[180]  In *Eason*, the Eighth Circuit held that this same Tennessee offense "plainly" contained "the elements of generic burglary as defined by the Supreme Court in Taylor."[181]  This Tennessee offense is very similar to the entry aspect of the Minnesota offense that the Eighth Circuit held in *McArthur* was not generic burglary.

In *Pledge* and *Eason*, the Eighth Circuit considered the same Tennessee statutes that were at issue in our court's decision in *Herrera-Montes*.[182]  The Eighth Circuit's conclusion that the Tennessee aggravated burglary offense was generic burglary is contrary to the conclusion in *Herrera-Montes* that it is not.

---

[176] 821 F.3d 1035, 1037 (8th Cir. 2016).

[177] 643 F.3d 622, 623 (8th Cir. 2011).

[178] *Pledge*, 821 F.3d at 1037 (citing *United States v. Priddy*, 808 F.3d 676, 684 (6th Cir. 2015)).

[179] TENN. CODE ANN. § 39-14-403 (2014).

[180] *Id*. § 39-14-402(a)(3).

[181] *Eason*, 643 F.3d at 624.

[182] *Pledge*, 821 F.3d at 1037 (examining TENN. CODE ANN. § 39-14-403, which refers to § 39-14-402 for elements); *Eason*, 643 F.3d at 624 (examining TENN. CODE ANN. § 39-14-402); *United States v. Herrera-Montes*, 490 F.3d 390, 391 (5th Cir. 2007) (examining TENN. CODE ANN. § 39-14-403, which refers to § 39-14-402 for elements).

No. 15-20308

The Ninth Circuit has held that "*Taylor* allows for burglary convictions so long as the defendant formed the intent to commit a crime while unlawfully remaining on the premises, regardless of the legality of the entry."[183]  That court reasoned that "[t]o hold otherwise would render *Taylor*'s 'remaining in' language surplusage."[184]   The elements of the Utah offense under consideration were that an actor "'enters or remains unlawfully in a building' that constitutes a 'dwelling' with intent to commit a crime."[185]   The Ninth Circuit observed that "the Utah Supreme Court held that to be convicted of burglary 'the actor must commit or form the intent to commit another crime at the time he enters or while he remains unlawfully in the building.'"[186]   The Ninth Circuit held that the Utah offense constituted "burglary of a dwelling" under § 2L1.2 of the Guidelines.[187]

As can be seen, there is a division among the Circuit Courts as to the elements of generic burglary.  There is no unanimity as to when the intent to commit a crime on the premises must be formed.

## VI

Bernel-Aveja contends that this court's decision in *Herrera-Montes*[188] governs this case, and in our decision today, we have concluded that it does. We said in *Herrera-Montes* that *Taylor*'s generic burglary definition requires that "the defendant intend to commit a crime at the time of unlawful entry or remaining in, as do the MODEL PENAL CODE § 221.1 and BLACK'S LAW

---

[183] *United States v. Reina-Rodriguez*, 468 F.3d 1147, 1155 (9th Cir. 2006), *overruled on other grounds by United States v. Grisel*, 488 F.3d 844 (9th Cir. 2007) (en banc) (citing *Taylor v. United States*, 495 U.S. 575, 598 (1990)).

[184] *Id*.

[185] *Id*. (citing UTAH CODE ANN. § 76-6-202(1)-(2)).

[186] *Id*. at 1156 (quoting *State v. Rudolph*, 970 P.2d 1221, 1229 (Utah 1998)).

[187] *Id*. at 1157.

[188] 490 F.3d 390 (5th Cir. 2007).

DICTIONARY 197-98 (6th ed. 1990)."[189]   We stated that, "[f]or example, teenagers who unlawfully enter a house only to party, and only later decide to commit a crime, are not common burglars."[190]  However, the Model Penal Code is not a "remaining in" provision, it has not been widely adopted, and as discussed above, many states had adopted "remaining in" statutes when *Taylor* was decided.  It also appears, as discussed above, that such statutes do not require the intent to commit another crime to have been formed at the time of entry.

Another decision of our court, though unpublished, observed that when a "remaining in" statute is at issue, requiring intent to commit a crime at the time of entry would be inconsistent with *Taylor*'s formulation of generic burglary.[191]  That opinion said specifically:  the "conclu[sion] that the definition of generic burglary requires that a defendant form the intent to commit a crime before entering a structure . . . would be inconsistent with the 'remaining in' aspect of *Taylor*'s definition."[192]  The panel in that case did not have to resolve the issue, however, since the standard of review was plain error, and the law was unclear in our circuit.[193]  That unpublished opinion concluded that the *Herrera-Montes* panel was not called upon "to reconcile the 'remaining in' aspect of *Taylor* with a requirement for intent at the time of entry."[194]  Today, our panel has to confront that question, and we have concluded that because *Herrera-Montes* held broadly that intent at the time of entry is an element of generic burglary, we must follow *Herrera-Montes*.

---

[189] *Herrera-Montes*, 490 F.3d at 392.

[190] *Id.*

[191] *United States v. Davis*, 339 F. App'x 359, 360 (5th Cir. 2009) (per curiam).

[192] *Id.*

[193] *Id.* at 361.

[194] *Id.*

No. 15-20308

However, to be clear, we did not have a "remaining in" statue before us in *Herrera-Montes*. The statute criminalized only *unlawful entry*, providing: "A person commits burglary who, without the effective consent of the property owner . . . [e]nters a building and commits or attempts to commit a felony, theft, or assault."[195]   Nor did the *Herrera-Montes* opinion characterize this Tennessee statute as a "remaining in" statute. To have done so would have been incorrect. The opinion did, however, offhandedly and entirely gratuitously address burglary by "remaining in" in dicta in one footnote.[196] That discussion was entirely unnecessary to the holding in the case. It should also be noted that part of that footnote discussed remaining in after *lawful entry*.[197] The Tennessee statute actually at issue criminalized only *unlawful entry* and as already discussed, had no "remaining in" component.

Today, JUDGE HIGGINBOTHAM's concurring opinion implies, if not states, that the statute before us in *Herrera-Montes* was a "remaining in" statute.[198] That is demonstrably incorrect. JUDGE HIGGINBOTHAM's concurring opinion also states that the statute at issue in *Herrera-Montes* "could have come within generic burglary only under a broad reading of 'remaining in' in the generic definition."[199]   But we did not, and were not required to, opine as to the meaning of "remaining in" to resolve the case. The fact that a single opinion from the Sixth Circuit, which refused to follow *Herrera-Montes*, observed that

---

[195] *United States v. Herrera-Montes*, 490 F.3d 390, 391 (5th Cir. 2007) (quoting TENN. CODE ANN. § 39-14-402(a)(3)).

[196] *See id.* at 392 n.1 ("Of course, if the intent could be formed anytime, then every crime committed after an unlawful entry or remaining in would be burglary. Relatedly, one who lawfully enters a building does not 'unlawfully remain' just because he later commits a crime, parlaying the crime into burglary because now intent and unlawful remaining coincide—a shoplifter, for instance, who enters lawfully but intending to steal does not 'unlawfully remain' when he commits the theft.").

[197] *See id.*

[198] *See ante* at __.

[199] *See ante* at __.

## No. 15-20308

the Tennessee statute at issue was "also a 'remaining-in' variant of generic burglary,"[200] is not dispositive as to whether that statute actually sets forth a "remaining in" offense, as JUDGE HIGGINBOTHAM's concurring opinion suggests.[201] The Tennessee statute did not contain the words "remaining-in" or their equivalent. It defined the offense only with reference to entry. The *Herrera-Montes* opinion's errant discussion of "remaining in" burglary was nothing more than an unnecessary and erroneous declaration.

**\*     \*     \***

Only the Supreme Court can resolve the split among the Circuit Courts as to when formation of intent for purposes of generic burglary must occur. But until the Supreme Court speaks, whether a conviction under Ohio's unlawful entry or remaining in statute is a generic burglary offense, and relatedly, what the generic offense of burglary by unlawfully remaining in requires with regard to when intent must be formed, are important questions that our court should decide en banc.

---

[200] *See United States v. Priddy*, 808 F.3d 676, 684 (6th Cir. 2015).

[201] *See ante* at __.